Emilio TIRADO, M.D. *v.*
John O'HARA and Jo O'Hara, His Wife

CA 99-857                                    15 S.W.3d 715

Court of Appeals of Arkansas ·
Division III
Opinion delivered May 3, 2000

*Shackleford, Phillips, Wineland & Ratcliff, P.A.*, for appellants.

*Compton, Prewett, Thomas & Hickey, P.A.*, by: *Ted Botner*, for appellee.

JOHN E. JENNINGS, Judge. This is an appeal from an order granting appellees' motion for a new trial in a medical malpractice case. Appellant Dr. Emilio Tirado surgically repaired appellee John O'Hara's hernia in March 1993. During the surgery, appellant placed one stitch through and another one around Mr. O'Hara's femoral nerve, which damaged the nerve and allegedly caused him to suffer pain in the right leg. At trial, the jury returned a verdict in favor of Mr. O'Hara and, based on interrogatories, set his damages at a total of $77,332.03. Although the jury also found in favor of Mr. O'Hara's wife, Jo, on her claim of loss of consortium, it awarded her no damages.

Appellees timely filed a motion for a new trial in which they argued that the jury's award of damages was inadequate and was clearly against a preponderance of the evidence. The trial court agreed and granted the motion. On appeal, appellant contends that the trial court erred in granting appellees' motion for a new trial. We disagree and affirm.

At the time of trial, Mr. O'Hara was fifty-one years old and had worked primarily as a carpenter. The surgery in question was Mr. O'Hara's third repair of a hernia located on the right side. His first hernia surgery occurred in 1990. He experienced a second hernia in 1992. He was also involved in a car accident at that time in which he ruptured a cervical disc. He received treatment for this injury from Dr. Jay Lipke, who kept him off work until January 1993. While convalescing from the neck injury, he had the second hernia repaired by Dr. Kerry Ozment in July 1992.

Mr. O'Hara soon developed another hernia that was repaired by appellant in March 1993. At the trial held on December 8, 1998, Mr. O'Hara testified that he experienced excruciating pain in his right leg the moment he regained consciousness from surgery. He said that the pain has persisted since the surgery but that its intensity comes and goes. He described the pain as a constant burning sensation that also felt like needles or briars were being stuck into his leg. He said that it was painful for his leg to be touched; that he wears overalls ninety-five percent of the time; and that he sleeps with a pillow between his legs. Mr. O'Hara further testified that he

has had trouble sleeping as much as four times a week and that he takes medication to help him sleep. A release procedure was done on the nerve in July 1993, and Mr. O'Hara did say that the pain had been worse prior to the procedure. Mr. O'Hara has not worked since the surgery, and he testified that the main disabling feature of his problem was the pain he felt in his right leg.

In terms of medical treatment, Mr. O'Hara was seen for his complaints of leg pain by Dr. Victor Martinez, a vascular surgeon, in June 1993. From his examination, the doctor suspected an injury to the right femoral nerve. He referred Mr. O'Hara to Dr. Jorge Martinez, a neurosurgeon. This doctor agreed with that diagnosis, and exploratory surgery was scheduled for July 22, 1993. Both Martinez doctors participated in the surgery in which they dissected the nerve and performed a neurolysis. During the procedure, they discovered that the right femoral nerve was entrapped in a large amount of scar tissue that was compressing the nerve. They also found that a suture had pierced the nerve and that another suture had been placed tightly around the nerve, which contributed to its compression. Dr. Jorge Martinez testified that it would take a year for the nerve to heal and that he would consider the damage to the nerve permanent if there was still pain after that time. It was also said that, if the sutures had been placed there before the surgery performed by appellant, Mr. O'Hara would have previously experienced the symptoms of leg pain. Along the same lines, Dr. Lipke testified that appellant did not complain of leg pain at the time of the second hernia surgery. Dr. Lipke also assigned a fifty percent permanent impairment rating as a result of the damage to the nerve.

Dr. Albert Beatty testified that hernia surgery was now done on an out-patient basis. He said that, given Mr. O'Hara's symptoms, he would have suspected a problem with the femoral nerve three to four days after the surgery. He further testified that, if there is an injury to a nerve because of a suture going through it, it is incumbent to remove the suture as soon as possible so as to reduce the chance of permanent damage. He felt that it would have been too late for a neurolysis to have been done as early as May 1993.

Dr. David Kline, a neurosurgeon, saw Mr. O'Hara in September 1995. He said that Mr. O'Hara had a mild femoral neuropathy that was associated with pain. He testified that the muscles served by the nerve were working well but that Mr. O'Hara's knee-jerk

reaction was absent and that he showed hypethesis and hyperthesia in the areas served by the nerve. Dr. Kline had suggested another procedure to clean out the nerve, which Mr. O'Hara declined. Dr. Kline said that he understood that decision because there was only a fifty to sixty percent chance that the procedure would help and a small chance that it might make the condition worse. He also believed it doubtful that the procedure would be helpful now after the passage of so much time.

Dr. William Ackerman, a pain-management physician, testified that he felt Mr. O'Hara's complaints of pain were genuine by observing changes in his hemodynamic perimeter by monitoring changes in pulse, blood pressure, and an EKG during his examination. Dr. Kerry Ozment testified that the placement of a suture through the femoral nerve would cause a tremendous amount of discomfort and excruciating pain.

Dr. Reginald Rutherford, a neurosurgeon, was a witness for the defense. He did not personally conduct an examination of Mr. O'Hara, but he reviewed Mr. O'Hara's medical records for the purpose of offering an opinion regarding the extent of his injury and resulting disability. Dr. Rutherford assigned a four percent permanent impairment rating. He said that one could draw the conclusion that there was excellent surgical intervention and a good recovery of motor function and that there was nothing objectively identified that would prevent gainful employment. He further testified that he did not question that Mr. O'Hara had suffered pain and that he did not disbelieve Mr. O'Hara's complaints of pain.

Rule 59 of the Arkansas Rules of Civil Procedure permits a trial court to grant a new trial if there is error in the assessment of the amount of the recovery, whether too large or too small, or if the verdict is clearly contrary to the preponderance of the evidence. Ark. R. Civ. P. 59(a)(5) and (6). The test this court applies in reviewing a trial court's granting of a motion for a new trial is whether the trial court abused its discretion; a showing of an abuse of discretion is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Lloyd's of London v. Warren*, 66 Ark. App. 370, 990 S.W.2d 589 (1999). Abuse of discretion in granting a new trial means a discretion improvidently exercised, i.e., exercised without

due consideration. *Razorback Cab of Fort Smith, Inc. v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993).

To arrive at its decision, the jury was asked a series of nine interrogatories. The questions and the jury's responses were as follows:

INTERROGATORY NO. 1: Do you find from a preponderance of the evidence that there was negligence on the part of Dr. Emilio Tirado which was the proximate cause of any damages?

ANSWER: Yes.

Only if your answer to Interrogatory No. 1 is yes, then answer the following Interrogatories. In those Interrogatories, state the amount of any damages which you find from a preponderance of the evidence were sustained by John O'Hara as a result of the occurrence.

VERDICT NO. 2: For the nature, extent, duration and permanency of his injury: $-0-.

VERDICT NO. 3: For past medical expenses: $16,832.03.

VERDICT NO. 4: For the present value of medical services reasonably certain to be required in the future: $25,000.00.

VERDICT NO. 5: For pain, suffering and mental anguish experienced in the past: $-0-.

VERDICT NO. 6: For the present value of any pain, suffering and mental anguish reasonably certain to be experienced in the future. $-0-.

VERDICT NO. 7: For the value of any working time lost. $10,500.00.

VERDICT NO. 8: For the present value of any ability to earn in the future. $25,000.00.

VERDICT NO. 9: We, the jury, find the issues in favor of the plaintiff, Jo O'Hara, and assess damages in the following amount. $-0-.

■ On appeal, appellant posits various theories to explain the jury's verdict. However, the trial court does not abuse its discretion when it can fairly be found that the jury failed to take into account all the elements of the total injury proven, even if it might be

possible to explain the verdict on the basis of something like awarding the plaintiff only the proven pecuniary losses. *Carr v. Woods*, 294 Ark. 13, 740 S.W.2d 145 (1987); *see also, e.g., Hamilton v. Russell*, 307 Ark. 478, 821 S.W.2d 35 (1991). In *Saber Mfg. Co. v. Thompson*, 286 Ark. 150, 689 S.W.2d 567 (1985), the plaintiff was lifted into the air and both of his forearms were broken when a tire ruptured with an explosive force. He was disabled for eight weeks, including substantial hospitalization; he lost wages of $500.00 a week; and he suffered great pain and injuries that were both permanent and disfiguring. The trial court granted the plaintiff's motion for a new trial when the jury awarded damages only in the amount of the medical expenses incurred. On appeal, the supreme court found no abuse of discretion in the trial court's decision.

█ In the case at bar we hold that the trial court could fairly conclude that the jury failed to take into account all of the elements of Mr. O'Hara's damages. The record leaves no room for doubt that Mr. O'Hara's femoral nerve had been damaged and that the injury manifested itself in the form of pain. It was also uniformly recognized in the testimony that the injury was most likely to some degree permanent. Yet, the jury awarded damages for only the actual monetary losses sustained by Mr. O'Hara. We find no abuse of discretion in granting the motion for new trial.

█ With respect to Mrs. O'Hara's claim for loss of consortium, appellant further argues that a jury need not, as a matter of law, give a pecuniary award for loss of consortium when damages are awarded to the injured spouse, as was held in both *Waterfield v. Quimby*, 277 Ark. 472, 644 S.W.2d 241 (1982), and *Smith v. Pettit*, 300 Ark. 245, 778 S.W.2d 616 (1989). Those cases, however, are distinguishable from the one at bar. In both of them, it was argued that the trial court erred in refusing to order a new trial based on the perceived inconsistency of damages being awarded to the injured spouse and none being awarded for loss of consortium. Here, the trial court granted the motion for a new trial based on a finding that there was a fundamental error in the assessment of the injured spouse's damages. We therefore can find no abuse of discretion in permitting the claim for loss of consortium to be retried as well.

Affirmed.

NEAL and GRIFFEN, JJ., agree.