2010 Ark. App. 171

**Bobbie BRUCE, Ronnie L. Rice, and Boyd Brothers Transportation Company, Appellants**

v.

**Floyd HANCOCK, Marlene Hancock, Patricia Runyan, and Wesley Runyan, Appellees.**

No. CA 08–739.

Court of Appeals of Arkansas.

Feb. 17, 2010.

Watts, Donovan & Tilley, P.A., Little Rock, by: Richard N. Watts, Debbie S. Denton, Staci Dumas Carson; Huckabay, Munson, Rowlett & Moore, P.A., by: Tod S. Cochran, Little Rock, for appellants.

Bill W. Bristow, P.A., Jonesboro; Curt Huckaby, P.A., Lake City, for appellees.

WAYMOND M. BROWN, Judge.

This case arises from a multi-vehicle accident in Greene County, Arkansas. The four appellees, who occupied one vehicle, sued two other motorists, appellants Bobbie Bruce and Ronnie Rice, for negligence, alleging that Bruce, Rice, and Rice's employer, appellant Boyd Brothers Transportation Co., were responsible for appellees' damages. Following a trial, the jury found no negligence on the part of Boyd Brothers and Rice and assigned 100% of the fault to Bruce. However, the jury awarded no damages to appellees. Appellees moved for a new trial on grounds that the verdict was too small and clearly against the preponderance of the evidence. The circuit court granted a new trial and appellants appeal from that order. We affirm.

On December 31, 2003, appellee Floyd Hancock was driving a Ford SUV with three passengers—his wife, appellee Marlene Hancock; his sister, appellee Patricia Runyan; and his nephew, appellee Wesley Runyan. The SUV was third in a line of northbound cars crossing the Cache River bridge on a two-lane highway. Just beyond the bridge, the first car in line stopped to turn left, awaiting the passage of oncoming traffic. The second car also stopped as did appellees' SUV. The next vehicle in line, although there is some dispute as to this, was a red van occupied by a Mr. and Mrs. Jarrett, and it apparently came to a stop as well. Behind the stopped vehicles were a blue van driven by appellant Bobbie Bruce, and an eighteen-wheel log truck driven by appellant Ronnie Rice for Boyd Brothers Transportation Co. The Bruce and Rice vehicles did not stop in time and crashed into the line of cars.

The only detailed descriptions of the accident came from Bruce and Rice. Bruce testified that she never saw the Jarretts' van and that she was behind appellees' SUV at all pertinent times. She said that, when she was approximately two car lengths from appellees, she noticed that their vehicle had stopped, although she did not see any tail lights. Bruce stated that she slammed on her brakes and was immediately hit by Rice, who was tailgating her. She explained that Rice's truck hit her once, causing her to collide with appellees' SUV, then hit her again and knocked her into the bridge railing.

Rice gave a different account of the accident. He said that his vision was partially obscured by a line of trees as he rounded a curve heading for the bridge. According to him, he was approximately 100 feet away from the line of cars when he saw the Bruce vehicle crash into the rear of the Jarretts' van, which was stopped behind appellees' SUV. Rice testified that he hit his brakes and, once the oncoming lane was clear, steered his truck there in an attempt to avoid the accident. In doing so, Rice said, he clipped the rear of Bruce's van with his right front fender, causing Bruce's van to spin and the Jarretts' van to become airborne and go over the bridge railing. Rice denied tailgating Bruce and said that he would not merely have clipped the back corner of her van if he had been following her that closely. He blamed Bruce for causing the accident.

Appellees were unaware of what was happening behind them. They testified that they felt one or two slight bumps, followed by a much larger impact. Trooper Charles Rowe, who investigated the accident, testified that conditions were clear and dry and that appellees' vehicle sustained significant damage in the rear. Rowe provided photographs of the scene, which showed that Bruce's vehicle had come to rest with its back end against the back of appellees' SUV; that the Jarretts' van was in the ravine beside the bridge railing; and that there was damage to the front right fender of Rice's truck.[1]

Immediately following the accident, Marlene Hancock's brother, Keith Blassingain, drove all of the appellees to the emergency room. Hospital personnel examined appellees and released them, but appellees later claimed that they developed various injuries. As a result, appellees brought this lawsuit against appellants. The parties tried the case to a jury in November 2007.

At trial, witnesses testified to the events surrounding the accident, as set

---

1. Neither side presented testimony from an accident reconstructionist or from the Jarretts.

forth above. The parties also devoted considerable time to appellees' claims for damages. The subject arose first during opening statements, where the Hancocks' counsel asked the jury to award at least $250,000 and the Runyans' counsel requested a lesser amount.[2] The attorney for Rice and Boyd Brothers did not dismiss the likelihood of a damage award, stating that the Hancocks were "likely entitled to compensation, based on the damages that they can prove were caused by this accident" and that the Runyans were "obviously without fault" and "clearly entitled to compensation, once you determine who is responsible."

During the presentation of evidence, Trooper Rowe testified that, according to his report, none of the appellees professed injury at the scene. Additionally, Ronnie Rice testified that he spoke to appellees at the scene and they indicated that they were fine. However, Keith Blassingain testified that, when he drove appellees to the emergency room, Floyd Hancock acted as though he was in "a lot of pain" and that Marlene Hancock was "very nervous and upset."

Floyd testified that his lower back was burning and stinging when he arrived at the emergency room but that the doctors released him and told him that he was just sore. A day or two later, he said, he had back pain, swelling, trouble walking, and trouble getting out of bed. He returned to the emergency room, complaining of low back pain and tingling in his left thigh, and came home with crutches and Ibuprofen. Thereafter, Floyd stated, he suffered from back problems so severe that he could not keep up with his lawn care business or his rental properties, could not participate in his customary leisure activities, and often cried from the pain. His testimony was corroborated by Marlene

and by a neighbor, Lisa Davies. Floyd subsequently underwent back surgery in March 2004 on the recommendation of Dr. Robert Abraham. Dr. Abraham testified that Floyd had a herniated disc, which most likely was caused by the accident. Floyd presented a claim for medical bills in the amount of $22,737.23.

Floyd acknowledged that fourteen months prior to the accident, he presented to another medical-care provider with low back pain and trouble walking, and that six months after the accident, he was in another car wreck. However, he stated that the prior back pain was treated, causing him no further problems, and that the latter accident caused pain that was different from what he experienced in the present accident. Marlene essentially corroborated Floyd's testimony. Dr. Abraham, who had been unaware of Floyd's prior back complaints, agreed that the records of those complaints reflected many of the same symptoms for which he treated Floyd after the accident. However, the doctor still opined that the accident was the likely cause of Floyd's difficulties.

Marlene Hancock testified that she had chest tightness and shoulder pain after the accident and thought she was having a heart attack. She said that her blood pressure was elevated at the emergency room, which the records bore out, but that she was released. Marlene said that she later began experiencing pain in her right shoulder, for which she received massage therapy and chiropractic care. At trial, she testified that her right shoulder still caused her pain, and she presented a claim for $6122.42 in medical bills and 82 hours in lost wages. Consistent with her claim, her January 2004 medical records showed complaints, of right shoulder pain. However, other medical records, from later in

---

**2.** Property damage to the Hancock SUV was   stipulated as $13,631.25.

2004, referenced her, left shoulder as the problem area.

Patricia Runyan testified that she had a mild tightness in her shoulders after the accident, for which she obtained muscle relaxers and Ibuprofen. She submitted a claim for $548.02 in medical bills and $473.29 in lost wages. Wesley Runyan testified that he injured his right hip in the crash and that he started hurting a few days after the accident. He said that he underwent physical therapy, then had a shot and felt better. Wesley testified that he missed time from work and had incurred approximately $5800 in medical bills.

During closing arguments, counsel for Bobbie Bruce stated, "There is no doubt that the Hancocks and the Runyans were injured. You can check that one off your list. You don't need to figure out if they sustained damages. They have." Counsel for Rice and Boyd Brothers disputed appellees' entitlement to the full amount of damages claimed but indicated that appellees might have sustained at least some injuries as a result of the accident.

After closing arguments and instructions, the court submitted the case to the jury on verdict interrogatories. Interrogatory #1 asked jurors if they found, from a preponderance of the evidence, that "there was negligence upon the part of Bobbie Bruce which was a proximate cause of any damages." The jurors answered "Yes." Interrogatory #2 asked jurors if they found, from a preponderance of the evidence, that "there was negligence upon the part of Ronnie Rice, as employee of Boyd Brothers Transportation, which was a proximate cause of any damages." The jurors answered "No." In Interrogatory #3, the jurors allotted 100% of the responsibility for the accident to Bruce. The last four interrogatories asked the jurors to "state the amount of damages which you find from a preponderance of the evidence were sustained by [each individual appellee] as the result of the occurrence." On each interrogatory, the jurors answered zero dollars.

Following entry of judgment, appellees moved for a new trial, asserting that the amount of recovery was inadequate and that the verdict was clearly contrary to the preponderance of the evidence. Appellees argued that they undisputedly suffered at least some damages from the accident and that the jury's finding that Bruce was solely at fault, while exonerating Rice, was at odds with the facts. The circuit court agreed and ordered a new trial "on both liability and damages." Appellants brought this appeal.

■ The Arkansas Rules of Civil Procedure permit a circuit judge to order a new trial if there is an error in the assessment of the amount of recovery or if the jury's verdict is clearly contrary to the preponderance of the evidence. Ark. R. Civ. P. 59(a)(5) and (6). When we review an order granting a new trial, our inquiry is whether the circuit court abused its discretion. *Razorback Cab v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993). The abuse of discretion must be "clear" or "manifest." *Young v. Honeycutt*, 324 Ark. 120, 919 S.W.2d 216 (1996). A showing of abuse is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id.* Abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly or without due consideration. *Id.*

Appellants argue that the circuit court should not have disturbed the jury's verdict and that the court essentially substituted its view of the evidence for the jury's. We note at the outset that appellants rely heavily on precedents involving

the *denial* of a motion for a new trial. *E.g., Dovers v. Stephenson Oil Co.*, 354 Ark. 695, 128 S.W.3d 805 (2003); *Depew v. Jackson,* 330 Ark. 733, 957 S.W.2d 177 (1997). Those cases employ a different standard of review, focusing on the substantiality of the evidence in support of the jury's verdict rather than on the circuit court's exercise of discretion; as such, those cases do not provide authority in an appeal involving the *grant* of a new trial. *See Hogan v. Holliday,* 72 Ark.App. 67, 31 S.W.3d 875 (2000).

▮ Having clarified our standard of review, we first address appellant Bruce's argument that a new trial was not warranted because the jury could have found that appellees did not meet their burden of proving damages. It is true that the party asserting entitlement to damages has the burden of proving the claim. *See generally Gen. Elec. Co. v. Gilbert,* 76 Ark.App. 375, 65 S.W.3d 892 (2002). However, appellees did not fail to meet that burden of proving damages, even if only a modest amount. If nothing else, their trip to the emergency room immediately following the accident was worthy of recompense by the responsible party or parties in this case. Moreover, appellees' entitlement to some damages appeared to be a given considering appellants' virtual concession in opening statements and closing arguments that appellees incurred some damages in the accident. Bruce's counsel even went so far as to tell jurors that it was not necessary for them to deliberate the established fact of appellees' injuries. A circuit court may consider concessions made in opening statements or closing arguments in deciding whether to grant a new trial. *See generally Machost v. Simkins,* 86 Ark. App. 47, 158 S.W.3d 726 (2004).

Bruce contends further that appellants successfully impeached appellees' damage testimony. Bruce cites Marlene's conflicting complaints of shoulder pain, Floyd's pre-existing back problems and subsequent car accident, and Trooper Rowe's statement that appellees did not claim injury at the scene. However, a plaintiff's lack of apparent injury at the scene does not prohibit a circuit court from setting aside a zero-dollar verdict, especially where the plaintiff sought medical evaluation and treatment soon after the accident. *See Hogan, supra.* Furthermore, while appellants might have discredited *some* of appellees' damage claims, they did not discredit appellees' entitlement to any damages. The contested issue at trial was the extent of appellees' injuries rather than whether they had been injured at all. Under these circumstances, we cannot say that the circuit court manifestly abused its discretion in granting a new trial based on the lack of a damage award to appellees.

Bruce also argues that the jury may have determined that appellees were not injured by her negligence. However, regardless of the jury's thinking on this point, the fact remains that the jury found that appellees sustained no damages as the result of the accident. As we have explained, the circuit court did not abuse its discretion in determining that an award of zero damages was an erroneous assessment under the circumstances of this case. *See Tirado v. O'Hara,* 70 Ark.App. 152, 15 S.W.3d 715 (2000) (affirming the grant of a new trial based on a fundamental error in the jury's assessment of the plaintiff's damages).

Appellants Rice and Boyd Brothers argue that the circuit court should have upheld the jury's verdict finding them not guilty of negligence. They cite *Razorback Cab, supra,* in which our supreme court reversed the grant of a new trial in a negligence case. *Razorback Cab* involved a plaintiff-bicyclist who was hit by a cab early one morning on a city street while it

was still dark. There was evidence that the cyclist was wearing dark clothing, that his bicycle had no lights or visible rear reflectors, and that he simply could not be seen. In the cyclist's suit against the cab company, the jury rendered a defendant's verdict. The circuit court granted a new trial, stating that there was no evidence that the cab driver could not see the bicycle. Our supreme court reversed and held that the circuit court manifestly abused its discretion in substituting its view of the evidence for the jury's. *Razorback Cab* is distinguishable from the present case. The circuit court's exercise of discretion there was tainted by an utter disregard of the evidence, which could aptly be characterized as thoughtless or improvident. In the present case, the circuit court did not act thoughtlessly or improvidently. The court was faced with a situation in which two drivers failed to stop their vehicles in time to avoid the stationary cars in front of them. The court determined, after measured consideration, that the particular manner in which the jury rendered its verdict—apportioning all fault to one defendant while exonerating the other, followed by an award of zero damages to plaintiffs who were not at fault—was clearly against the preponderance of the evidence. Given this set of circumstances, we cannot say that the circuit court abused its discretion in deciding to order a new trial. We therefore affirm the new trial order as to all parties. We hasten to add that our holding should not be taken as a comment on appellants' negligence for purposes of re-trial. Our holding is that the abuse-of-discretion standard of review compels our affirmance in this case. *See Honeycutt, supra; Richardson v. Flanery,* 316 Ark. 310, 871 S.W.2d 589 (1994).

Rice and Boyd Brothers also argue that appellees were not aggrieved by the jury's verdict because appellees prevailed in their case against Bruce. We decline to hold that a zero-dollar verdict against one defendant alone constitutes "prevailing," such that a plaintiff is deprived of standing to seek a new trial.

Based on the foregoing, we affirm the circuit court's grant of a new trial.

Affirmed.

HART and GLADWIN, JJ., agree.