SLIP OPINION

Cite as 2017 Ark. 173

# SUPREME COURT OF ARKANSAS

No. CV–16–566

| | |
|---|---|
| | **Opinion Delivered:** May 11, 2017 |
| JAMES TREE AND CRANE SERVICE, INC., AND ROGER WILLIAMS<br><br>            APPELLANTS<br><br>V.<br><br>TERRI FOUGHT<br><br>            APPELLEE | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION [NO. 60CV-08-10413]<br><br>HONORABLE ALICE GRAY, JUDGE<br><br><br>AFFIRMED; COURT OF APPEALS' OPINION VACATED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

Appellants James Tree and Crane Service, Inc., and Roger Williams (collectively, "James Tree") appeal from the Pulaski County Circuit Court's order granting appellee Terri Fought's motion for a new trial. For reversal, James Tree argues that the circuit court abused its discretion in granting Fought's motion for a new trial and in setting aside the jury's unanimous verdict in favor of James Tree. This case is on review from the Arkansas Court of Appeals, and our jurisdiction is pursuant to Arkansas Supreme Court Rule 1-2(e) (2016). We affirm the circuit court and vacate the court of appeals' opinion.

On June 26, 2007, Fought was stopped at a red light in her Toyota Prius when she was rear-ended by a Mack truck operated by Williams and owned by James Tree. Williams left the scene of the accident, but Fought followed him and obtained the truck's license-plate number.

Fought filed suit against James Tree and a John Doe defendant on September 22, 2008, in connection with injuries that were allegedly caused by the accident. She amended her complaint on several occasions, and her fourth amended complaint was filed on June 13, 2013, substituting Williams for the John Doe defendant. Fought alleged that Williams was negligent in causing the automobile collision and that she had suffered damages for permanent bodily injuries, past and future medical expenses, past and future pain and suffering, loss of earning capacity, past and future mental anguish, and expenses to assist her and her family in their home. She also included a claim for civil action by a crime victim, asserting that Williams's failure to remain at the scene was a felony entitling her to additional damages. Fought's husband, Rick, also alleged a loss-of-consortium claim, which was voluntarily dismissed prior to trial.

The seven-day jury trial began on September 16, 2013. Little Rock Police Officer Edwin Brown testified that he was dispatched to the hit-and-run accident. Brown indicated that the damage to Fought's vehicle consisted of a fist-sized dent, which was one-quarter of one inch to one-inch deep, on the tailgate, in addition to minor damage to the bumper. He testified that Fought did not tell him she was injured at that time but that it was common for motor-vehicle-accident victims to later discover that they are injured after the adrenaline has dissipated.

Jesse David Wall, a retired physics professor, testified that the Mack truck involved in the accident weighed nearly 34 tons, that it was traveling at approximately five miles per hour, that Fought's vehicle experienced an acceleration of 6.9 times the acceleration due to

gravity after it was hit by the truck, and that the forces on Fought amounted to 8.5 times the acceleration due to gravity.

Dr. Steven Bennett, a chiropractor in Little Rock, testified that Fought first sought treatment from him on June 27, 2007, the day after the wreck. He stated that Fought suffered sprains and strains of the cervical and lumbar spine from the accident and that she also complained of headaches. Dr. Bennett testified that there were no degenerative changes present on the x-ray and that the DMX machine, which is a motion x-ray, revealed multiple torn ligaments. He stated that torn ligaments do not heal and that these injuries were permanent. He indicated that the frequency of Fought's need for treatment following the accident fluctuated because she often aggravated her condition while performing daily activities. According to Dr. Bennett, Fought had reached maximum medical improvement in May 2008, and in 2010, he assigned her a 25 percent impairment rating to the whole body due to her neck injuries caused by the accident. Dr. Bennett testified that he had provided six years of chiropractic treatment to Fought, which totaled $20,408, and that Fought continued to see a chiropractor in Memphis, where she now lived.

Victoria Powell testified that she had prepared a life-care planning document detailing the medical expenses and other care that Fought would require in the future. This document, which was admitted into evidence, listed a total of $398,970.87 for Fought's life-care plan.

Fought testified that the force of the vehicular collision pushed her car halfway into the intersection and that she was shocked and angry when she saw the driver of the truck leave the scene. She stated that she began to experience pain in her neck and a headache

shortly after the wreck. Fought indicated that she was very stiff and sore and that she still had a headache the next morning. She went to see Dr. Bennett that day, and he prescribed muscle relaxers and anti-inflammatories. Fought testified that she sought treatment with Dr. Bennett on a daily basis for the first few weeks after the wreck because she was in pain and was having muscle spasms. She stated that she gradually began feeling better, and after several months, she required only bi-weekly treatment from Dr. Bennett. Fought realized after one year that she was not going to further improve and that the pain would never completely disappear. Fought testified that when she experiences flare-ups, she suffers from extreme neck pain and debilitating headaches. After Fought and her family moved to Memphis in 2010, she began seeing a new chiropractor, Dr. Richard Wyse, whom she continued to see for adjustments to her C1 vertebrae. She described the treatment as a "gentle tap" behind her ear, and she stated that it provides her with immediate relief. Fought provided a list of her past medical bills related to the accident that totaled $35,491.

Fought also testified to the drastic changes in her life since the accident. She stated that she must take medication to sleep and that she sleeps in a recliner. She further testified that her injuries negatively impact her ability to perform household chores and participate in activities with her children. Fought indicated that it is difficult to physically manage her nine-year-old autistic son, who now lives with her parents, and that she often experiences a flare-up after caring for him. In addition to her own testimony, Fought also presented testimony from family and friends to support her claim that she continues to experience pain and physical limitations due to the accident.

On behalf of the defense, Dr. Harry Smith, a radiologist who engages in injury-causation analysis, testified. He concluded from the damage to Fought's vehicle that James Tree's truck was traveling no faster than three miles an hour and that the force that Fought experienced was less than "3 g's." According to Dr. Smith, the impact from the crash was "between a sneeze and a jostle." He testified that all of Fought's radiologic images were normal for her age, with only degenerative changes noted. Smith denied that there was any evidence of torn ligaments from the accident. However, Dr. Smith agreed that there was medical evidence that the impact had caused her to suffer sprains and strains, as noted by Dr. Bennett after his initial examination. Outside of those soft tissue injuries, Dr. Smith stated that there is nothing wrong with Fought's spine. He testified that clinical treatment for a sprain or a strain can last from six to eight weeks but that there was no support in the medical community for the extensive treatment Fought had received over the previous six years.

At the conclusion of the trial, the jury was instructed to answer four interrogatories during its deliberations. The first interrogatory asked, "Do you find from a preponderance of the evidence that Plaintiff Terri Fought has sustained damages which are proximately caused by the negligence of the Defendants?" If the jury answered yes to this question, the jury was then instructed to answer the second interrogatory by stating the amount of damages sustained by Fought that were proximately caused by James Tree. The third interrogatory asked, "Do you find from a preponderance of the evidence that Plaintiff Terri Fought sustained injury or damage as a result of Defendant Roger Williams leaving the scene of the collision?" If the jury answered yes to this interrogatory, it was instructed to

answer the fourth interrogatory by stating the amount of damages sustained by Fought as a result of Williams leaving the scene.

After deliberations, the jury answered no to the first and the third interrogatories and indicated on the second and fourth interrogatories that the amount of damages was "$0." The jury confirmed that this was its unanimous verdict. On October 24, 2017, the circuit court entered a judgment consistent with the jury's verdict and dismissed Fought's complaint.

Fought filed a motion for a new trial on November 4, 2013. She argued that a new trial was warranted on three independent grounds: (1) that the jury's verdict finding that she did not sustain any injuries or incur any damages proximately caused by the collision was clearly against the preponderance of the evidence admitted at trial pursuant to Arkansas Rule of Civil Procedure 59(a)(6); (2) that the jury made an error in assessing zero damages pursuant to Rule 59(a)(5); and (3) that the prejudicial misconduct of James Tree's attorneys violated the circuit court's rulings and the Arkansas Rules of Professional Conduct, depriving her of a fair trial pursuant to Rule 59(a)(1) and (a)(2).

Fought based her argument with respect to the third ground on multiple allegations of misconduct on the part of James Tree's counsel. Specifically, Fought referenced the circuit court's order finding one of the attorneys in contempt and fining him a total of $1,800 for violating the court's rulings with regard to certain inadmissible evidence and statements made by counsel during closing argument. Other instances of misconduct described by Fought included allowing the jury to see photographs that had not been ruled

admissible and engaging in inappropriate behavior during the presentation of her case such as eye rolling and making inappropriate facial expressions.

After the parties filed a response, a reply, and a sur-reply, the circuit court entered an order on December 4, 2013, setting aside the judgment and granting Fought a new trial. The court did not specify the basis for its ruling. James Tree filed a timely notice of appeal from the circuit court's order.

The court of appeals reversed the circuit court's grant of a new trial, *James Tree & Crane Service v. Fought*, 2016 Ark. App. 320, and Fought filed a petition for review with this court, which we granted on October 6, 2016. When this court grants a petition for review, we treat the appeal as if it had been originally filed in this court. *Gildehaus v. Ark. Alcoholic Beverage Control Bd.*, 2016 Ark. 414, 503 S.W.3d 789.

On appeal, James Tree argues that the circuit court abused its discretion in summarily granting Fought's motion for a new trial and setting aside the jury's unanimous verdict. James Tree asserts that none of the arguments raised in Fought's new-trial motion provided grounds to set aside the verdict and that the motion was based on nothing more than Fought's disappointment with the outcome of the trial.

We will reverse a circuit court's order granting a motion for a new trial only if there is a manifest abuse of discretion by the circuit court. *Smith v. Hopper*, 2015 Ark. 210, 462 S.W.3d 335. A manifest abuse of discretion means a discretion that is improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.* We have stated that it is even more difficult to demonstrate an abuse of discretion when a new trial has been

granted because the party opposing the motion will have another opportunity to prevail. *Id*.

Although James Tree contends that the circuit court erred by summarily granting Fought's motion for a new trial without explaining the basis for its ruling, there was no requirement that the court provide specific findings of fact or conclusions of law in the absence of a request to do so under Arkansas Rule of Civil Procedure 52(b)(1) (2016). Thus, we must affirm if any of the grounds alleged in the motion would sustain the circuit court's order. *Young v. Honeycutt*, 324 Ark. 120, 919 S.W.2d 216 (1996).

We first address Fought's argument that a new trial was warranted pursuant to Rule 59(a)(6) because the jury's verdict was clearly against the preponderance of the evidence. Although the circuit court has some discretion in deciding this issue, the court may not substitute its view of the evidence for that of the jury's. *Diamond State Towing Co., Inc. v. Cash*, 324 Ark. 226, 919 S.W.2d 510 (1996).

In her new-trial motion, Fought contended that the jury's answer to Interrogatory Number 1, finding that she did not sustain any damages that were proximately caused by the negligence of James Tree, was clearly against the preponderance of the evidence presented at trial. She asserted that the evidence was undisputed that she sustained some injury and resulting damages due to the collision and that the primary issue in dispute was the severity of her injuries and the amount of damages to which she was entitled.

We agree. Although James Tree's expert, Dr. Smith, disagreed with Fought's expert witnesses regarding the severity and permanent nature of her injuries, Dr. Smith did admit that the amount of force Fought would have sustained in the collision was consistent with

the sprains and strains found by Dr. Bennett the day after the accident. Smith testified that such soft-tissue injuries typically resolve within six to eight weeks of treatment. Furthermore, in accord with this testimony, James Tree made the following statements during its closing argument to the jury:

> Let's get down to talking about the car wreck. Answer to Interrogatory Number 1, "Did she have an injury as the result of the car wreck?" You bet. Would I say that she didn't? No. I wouldn't tell you that. But when you come to that question, and you think about what you've heard in this case, and you think where we are six and a half years later, tap yourself behind your right ear. Come back around to what you've heard. A fist-sized dent a quarter-inch deep, and they've got her believing— and we asked her about it; we saw it—they've got her believing it.
>
> . . . .
>
> I ask you to answer Interrogatory Number 1 yes. I ask for you to look at those medical bills for that six to eight weeks. Or even, Ladies and Gentlemen, if you think that maximum medical improvement as described by Dr. Bennett wasn't until June of 2009—or '08, excuse me—2008, then so be it.

Even though the jury is instructed that statements and arguments made by counsel are not evidence, both this court and the court of appeals have nonetheless considered concessions made during opening or closing arguments in determining whether the circuit court erred in deciding whether to grant a new trial. *See, e.g.*, *Yeager v. Roberts*, 288 Ark. 156, 702 S.W.2d 793 (1986); *Bruce v. Hancock*, 2010 Ark. App. 171, 374 S.W.3d 138; *Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004). Based on the uncontroverted evidence at trial that Fought suffered, at minimum, strains and sprains in her neck and back that caused her to seek chiropractic treatment shortly after the collision, combined with defense counsel's virtual concession on this issue during closing argument, we cannot say that the circuit court abused its discretion in finding that the jury's verdict was clearly against the preponderance of the evidence and that a new trial was warranted under Rule 59(a)(6).

We therefore affirm on this basis. Accordingly, there is no need to address Fought's remaining arguments in support of her motion for a new trial.

Affirmed; court of appeals' opinion vacated.

*Watts, Donovan & Tilley, P.A.*, by: *Michael McCarty Harrison* and *Jim W. Tilley*, for appellant.

*Chaney Law Firm, P.A.*, by: *Don P. Chaney*, *Nathan P. Chaney*, and *S. Taylor Chaney*; and *Moffitt & Phillips*, by: *Brandon Moffitt*, for appellee.