MISSOURI PACIFIC RAILROAD COMPANY v. HOOD.

4-5544                                                  131 S. W. 2d 615

Opinion delivered June 26, 1939.

*Thos. B. Pryor* and *Thos. B. Pryor, Jr.*, for appellant.

*Bob Bailey, Jr.*, and *Bob Bailey*, for appellee.

MEHAFFY, J. This action was instituted by the appellee against the appellant in the Pope circuit court to recover damages for personal injuries alleged to have been received as the result of negligence of the appellants.

The appellee was riding in a wagon, driving a team, and attempted to cross the railroad track in Russellville, Arkansas. It is alleged that the crossing gates were lowered and about the time the team was about to pass off the crossing, one of the arms of the gate hit the mule on the back, bounced up and came down again, striking appellee in the small of the back.

The appellee testified that he was 47 years old, lives at Russellville and is a farmer; has always enjoyed good health, up to the time of his injury; prior to his injury he weighed 200 pounds; witness has not been able to work any since the injury, and now weighs 182; he was engaged in farming and bought cattle and traded and made approximately $100 a month prior to the accident; when he got to the railroad crossing he heard a train down east to his left; he pulled up like he was going to stop and either a conductor or a brakeman at the crossing motioned for him to come on; when witness got up to where he could see the train was coming on east on the main line; the gates were up when he entered the crossing, and as he was crossing over the track he saw the gates falling in front of him and saw it was going to hit his mule, and braced himself to hold the mule; witness tried to hold the mule when the gate hit him, and the mule jumped and jerked and tried to run, the gate came over across the small of witness' back; he

had his lines in his hand and was trying to bend over so the gate would not hit him; the team tried to run and witness stopped them in about 20 feet. The morning after the accident he went to the hospital and asked for Dr. Louis Smith; waited 20 or 30 minutes and Dr. Bob Smith came in and told him he would wait on him; witness told him how he was hurt and the doctor taped him up and gave him a prescription; he then went to the clinic and they treated him until the 25th or 26th of January. His injury occurred on December 20th. There was no bell ringing or anything to indicate that the gate was going to drop.

Appellee was asked on cross-examination if he did not, about ten days before the accident, fall out of a wagon backwards. He said he did, but that it did not hurt him at all.

W. E. Petree testified to substantially the same facts testified to by appellee.

There was a verdict and judgment in favor of appellee for $1,500. The case is here on appeal.

There was some conflict in the evidence as to the extent of the injury, but it would serve no useful purpose to set out the testimony in detail. It is sufficient to say that there was substantial evidence to support the verdict.

Numerous instructions were given, but all objections to instructions have been abandoned, and it is not urged in the brief that there was any error in the instructions.

It is, however, earnestly insisted that the case should be reversed and the cause remanded because of the improper remarks of the attorney for appellee, and appellants say that the verdict is accounted for in no other way except through the effective abuse and misconduct indulged in by the attorneys for the plaintiff.

The appellee's attorney stated, in his closing argument: "That the attorney for the defendant had spent $500 trying to beat this man out of $3,000."

Counsel for appellants objected to this statement and asked the court to declare a mistrial, whereupon the court

said: "The jury will not consider that. There is no proof to that effect."

Appellants call attention first to the case of *German-American Insurance Company* v. *Harper*, 70 Ark. 305, 67 S. W. 755. In that case it was conceded by appellant that if its local agent had notice of additional insurance, and failed to object thereto, the forfeiture was waived. Appellant's local agent testified that he had no notice of the additional insurance before the loss. Witnesses for appellees testified that he had such notice. This was a question of fact upon which the issue was sharply drawn, and Marshall, the witness upon whom appellant relied to establish the want of notice, testified that he had no such notice. One of the attorneys for the appellee said: "Gentlemen of the jury, if you knew Marshall's business methods, you would say, 'God save the plaintiffs, and God save all those who deal with him.'" This statement amounted to a charge against the witness of dishonesty in business and it was promptly objected to by counsel for the appellant. The court in that case, however, said: "Ordinarily, an objection by the opposing counsel promptly interposed, followed by a rebuke from the bench and an admonition from the presiding judge to the jury to disregard prejudicial statements, is sufficient to cure the prejudice; but instances sometimes occur in which it is not sufficient."

Appellants next call attention to *Arkansas Land & Lumber Company* v. *Manning*, 121 Ark. 633, 180 S. W. 474. In that case, in the closing argument to the jury, the counsel for appellee made the following statement: "You cannot sue a foreign corporation for more than $3,000 in the state courts, because it would be subject to federal jurisdiction and removal to the federal court." This statement was objected to and the court was asked to exclude the same from the jury and to admonish the jury not to consider it, but the court overruled the objection and refused to exclude the same from the jury. This court, it is true, said the statement was improper and that the court should have sustained the objection.

In arguing the objection to the remarks of the attorney, attorneys for appellants say that the verdict in the instant case is excessive. Appellants argue that it is impossible to conceive twelve jurors returning a verdict unless resort was had to compromise. We do not agree with appellants in this argument. We think it would be impossible to conceive twelve intelligent jurors, possessing the qualifications that the law requires them to possess, being in any way influenced by the remark of the attorney when the trial court told them that they must not consider this statement, and that there was no proof to that effect.

In the next case to which attention is called, *Kansas City F. S. & M. R. Co.,* v. *Sokal,* 61 Ark. 130, 32 S. W. 497, the court said, among other things: "Hence it is the obvious duty of courts, in the furtherance of the object of their creation, to prevent such assertions or appeals or, when made, to remove their evil effects, so far as they can." The court in that case continued: "While it is the duty of trial courts to confine counsel within the limits of legitimate debate, an omission to do this duty, while it may be a good reason for criticism, will not always entitle the appellant to a reversal of the judgment of the court below."

In the next case relied on by appellants, *St. Louis, Iron M. & S. Ry. Co.* v. *Waren,* 65 Ark. 619, 48 S. W. 222, defendant objected to the remarks made by plaintiff's counsel, but the court permitted him to proceed and make such remarks to the jury over the objection of defendants. At the close of the argument the court instructed the jury that the remarks were improper and they should pay no attention thereto.

In the case of *Sanger* v. *McDonald,* 82 Ark. 432, 102 S. W. 690, the court said, speaking of the trial court: "The court, by failing to stop counsel, to reprimand him for the argument and to take it from the jury when objection was made, virtually held that the remarks were proper." Certainly that case can have no application to the facts in the instant case.

In the case of *Williams* v. *Cantwell,* 114 Ark. 542, 170 S. W. 250, another case relied on by appellants, the court held that error was committed and said: "Information as to any juror's connection with any insurance company could have been obtained in a less dramatic manner by asking each of the jurors if he represented or was connected with any casualty company insuring employers against liability, or if he was connected with any insurance company, or any other proper question which might have tended to disclose whether any juror had any bias or prejudice likely to influence his verdict one way or the other; and had any juror answered that he was so connected with any such insurance company it would not have been improper to have permitted a more minute inquiry of such juror."

The next case to which attention is called and upon which appellants rely is *Childs* v. *Neal,* 138 Ark. 578, 211 S. W. 660. Appellants quote from the opinion in that case, that the court said that the remarks were highly improper. The remarks were as follows: ". . . 'defendant, a banker, within the draft age, who, while evading the military service of his country, was trying to cheat the plaintiff, who was offering his life in his country's cause,' and asked the jury which of the two they would believe." Yet the judgment in that case was affirmed, notwithstanding the remarks of the attorney.

Our attention is next called to the case of *St. Louis, Iron M. & S. Ry. Co.* v. *Hairston,* 125 Ark. 314, 188 S. W. 838. In that case the court said: "However, a wide range of discretion must be allowed the circuit judges in dealing with the subject, for they can best determine at the time the effect of unwarranted argument; but that discretion is not an arbitrary one, but that sound judicial discretion the exercise of which is a matter of review." Not only does the opinion state that circuit judges have wide discretion and that they can best determine at the time the effect of the unwarranted argument, but in that particular case Chief Justice McCullough wrote a dissenting opinion in which Justice Kirby concurred. In the dissenting opinion he stated: "A very

large degree of discretion must necessarily rest with the trial judge in such matters, and I assume that he has endeavored to fairly exercise it so as to preserve the integrity of the trial. . . . But unless it is manifest that prejudice resulted from an improper argument, and the trial judge has failed to do all he could to eliminate the possibility of prejudicial effect, we should not reverse the judgment, however much we may be disposed to condemn the argument. If we adopt the rule of reversing judgments merely because improper remarks have been made in the progress of the trials, we will increase very materially the number of reversals.''

We should not overlook the fact that the trial judge is learned in the law, and as much interested in a fair and impartial trial as we are. As stated by this court repeatedly, they can best determine at the time the effect of unwarranted arguments. And we should not overlook the fact that the jurors are men of intelligence, sworn to try the case according to the law and evidence, and probably as free from bias or prejudice as we are.

In the case of *St. Louis, Iron M. & S. Ry. Co.* v. *Raines,* 90 Ark. 398, 119 S. W. 665, 17 Ann. Cas. 1, the attorney for the plaintiff made the following remark: ''Bill Coyne was bound to tell it that way, and if he did not he would not hold his job fifteen minutes.'' Objection was made at the time and the court sustained the objection, just as he did in the instant case. The court said: ''Under these circumstances we do not think that any prejudicial error occurred from these remarks. We have frequently referred to the duty of the trial court to control the argument of counsel and to keep them within the record and the legitimate scope of the privilege of counsel; but some reliance should be placed upon the sound judicial discretion of the trial judge.''

Whether the counsel's conduct deserves reprimand or not is a matter for the sound discretion of the trial court. It is also a matter for the discretion of the trial court whether the reprimand was sufficient, if a reprimand is necessary at all in his judgment. It is the duty of the trial court, if improper remarks are made, to ad-

monish the jury, as he did in this case, to not consider them. While great latitude is allowed attorneys in the argument of cases, yet they should not go beyond the scope of legitimate argument and make any assertions that might result in prejudice. On the other hand, no one is perfect, and lawyers on each side are partisans, and in the heat of argument many times say things that they would not otherwise say. This, however, is always in the presence of the trial judge, and it is his duty to sustain objection to any improper argument and to instruct the jury not to consider it.

We think the trial court did all that his duty required him to do in this case. The appellants did not ask that the attorney be reprimanded or that anything be said to the jury. The only request they made was for the court to declare a mistrial.

The judgment of the circuit court is affirmed.