Douglas JAMES, Fidelity and Guaranty Co., Inc., and Shelter Mutual Insurance Co. *v.* BILL C. HARRIS CONSTRUCTION CO., INC.

88-213                                    763 S.W.2d 640

Supreme Court of Arkansas
Opinion delivered January 17, 1989
[Rehearing denied February 13, 1989.]

*Frank Booth*, for appellant Douglas James; *Shaw, Ledbetter, Hornberger, Cogbill & Arnold*, by: *James A. Arnold II*, for appellant Fidelity and Guaranty Company; and *Jones, Gilbreath & Jones*, by: *Kendall B. Jones*, for appellant Shelter Mutual Insurance Company.

*Warner and Smith*, by: *G. Alan Wooten*, for appellee.

JOHN I. PURTLE, Justice. This is an appeal from the denial by the trial court of appellant's motion for a new trial. The appellant's six arguments for reversal are: (1) the court erred in failing to allow testimony of the defendant's net worth; (2) the court erred in granting the defendant's motion for a directed verdict on the issue of punitive damages; (3) the court erred in

denying the plaintiff's (appellant's) motion for a directed verdict; (4) the court erred in failing to admonish the jury after improper remarks by the defense attorney in closing arguments; (5) the court erred on several instructions to the jury; and (6) the court erred in failing to grant a new trial. Finding no reversible error the decision of the trial court refusing to grant a new trial is affirmed.

This claim for personal injuries grew out of the collision between an automobile driven by the appellant and a front-end loader owned by the appellee and driven by one of its employees. The driver of the front-end loader was proceeding west on Zero Street in Fort Smith at a speed between 15 and 20 miles per hour, when he slowed to make a right turn onto South 24th Street. The appellant testified that at this point he had driven up to the intersection of South 24th and Zero Streets and stopped at the stop sign. The driver of the front-end loader stated he did not see the appellant's vehicle until he had made his right turn and the bucket on the front-end loader was pushing the appellant's automobile along the street. At the time of impact the appellant's vehicle was on his side of the road and the bucket on the loader extended over into the appellant's lane of travel.

The appellant developed many medical problems over a period of time, including problems with his cervical spine which eventually necessitated surgery. At the time of the occurrence he was in the course of his employment and, therefore, as a result of his injuries, he received medical and disability benefits under the workers' compensation law. Shelter Mutual Insurance Company also paid disability benefits under a separate policy. Both the compensation carrier, Fidelity and Guaranty Company, Inc., and the disability carrier, Shelter Mutual Insurance Company, intervened when the appellant filed suit.

At the commencement of the trial, it was stipulated that Shelter had paid $4,170.00 in disability benefits under its policy and that Fidelity had paid temporary total disability benefits under the workers' compensation act in the amount of $21,296.00; permanent disability benefits in the amount of $7,623.00; and medical benefits in the amount of $21,750.00. Appellee agreed to this stipulation as to the amount and the reasonableness of the bills, but did not stipulate that the bills were owed by the appellee.

The jury found for the appellant on the issue of liability and fixed his damages in the sum of $8,000.00. The appellants moved for a new trial on the basis of the inadequacy of the award in view of the stipulations. It is from the denial of that motion that the appellants bring this appeal.

The first argument by the appellant is that the court erred in refusing to allow evidence of the appellee's net worth in view of the claim for punitive damages. (A proffer was permitted.) The second argument is that the trial court erred in directing a verdict for the appellee on the issue of punitive damages. As these two arguments are closely interrelated, they will be addressed together in this opinion. The appellant relies primarily on the case of *Missouri Pacific Railroad Co. v. Arkansas Sheriff's Boys' Ranch*, 280 Ark. 53, 655 S.W.2d 389 (1983). The facts in the *Missouri Pacific Railroad* case reveal that officials of the railroad had decided that it was less expensive to settle the lawsuits than to clear the right-of-ways as required by law. In the present case it has not been demonstrated that the appellee or its driver were acting in violation of the law nor that the conduct was of such a nature as to give rise to punitive damages.

The appellant also relies on AMI 2217. This instruction requires as a basis for an award of punitive damages that a defendant "knew or ought to have known, in light of the surrounding circumstances, that his conduct would naturally or probably result in injury and he continued such conduct in reckless disregard of the consequences from which malice may be inferred." We discussed punitive damages in *Freeman* v. *Anderson*, 279 Ark. 282, 651 S.W.2d 450 (1983). There we stated:

> In order to support an award of punitive damages, the evidence must indicate the defendant acted wantonly in causing the injury or with such a conscious indifference to the consequences that malice might be inferred. Negligence alone, however gross, is not a sufficient basis to justify the award of punitive damages.

The *Freeman* opinion went on to discuss "wilfullness, or conscious indifference to consequences from which malice may be inferred" as a basis for punitive damages. The opinion held that it must appear that the acting party either knew or had reason to believe that his action was about to inflict injury and that in spite

of this knowledge he continued his course of conduct with a conscious indifference to the consequences. Only in such a case may malice be inferred and punitive damages awarded.

There simply is no proof in the record which would justify the introduction into evidence of the net worth of the appellant under the claim for punitive damages. There is no evidence of wilful and wanton conduct from which malice may be inferred. It is clear that the court was correct in directing the verdict against the appellant on the issue of punitive damages.

The third argument is that the court erred in failing to direct a verdict for the plaintiff at the close of all the evidence. The motion for the directed verdict and the argument on this appeal are premised upon the contention that the appellant was without fault in this occurrence. Therefore, if there was no fault on the part of the appellant, there was nothing to compare with the fault of the appellee. We considered this issue in the case of *Thigpen* v. *Polite*, 289 Ark. 514, 712 S.W.2d 910 (1986), where the defendant had admitted fault for the accident. The jury returned a verdict for the plaintiff but awarded zero damages. In the motion for a new trial the appellant argued that since the defendant admitted fault the jury verdict must be set aside because of the absence of any award of damages. *Thigpen* held that an admission of fault by the defendant does not automatically entitle the plaintiff to recover damages. Damages must be proven even though fault is admitted.

In the present case the testimony of Tommy Phillips, the driver of the front-end loader, was that the appellant's vehicle was "nowhere in sight" when he began making the turn from Zero Street onto 24th. There is an implication from this testimony that the appellant's vehicle might have driven up to the intersection after the loader had started its turn. Although the appellant and an independent witness testified that his vehicle was stopped prior to the loader starting its turn, such testimony is not binding upon the jury.

In denying a motion for a directed verdict we give the proof against the motion its strongest probative force. The proof and all reasonable inferences must be examined in the light most favorable to the party against whom the motion is sought, and if there is substantial evidence to support the decision of the trial

court, we will affirm. The testimony of the driver of the loader was contradicted by the testimony of the appellant and another witness. However, we cannot say that the testimony of the employee of the appellee is not substantial. A directed verdict in favor of the party having the burden of proof is improper because the jury need not necessarily believe his evidence.

Two cases cited by the appellee are quite similar to the present case: *Gilbert* v. *Diversified Graphics*, 286 Ark. 261, 691 S.W.2d 162 (1985); and *Taylor* v. *Boswell*, 272 Ark. 354, 614 S.W.2d 505 (1981). Gilbert's vehicle was struck from behind by a vehicle owned by Diversified Graphics. In her personal injury and property damage claim in the amount of $300,000.00, the appellant offered proof that she had incurred $12,895.81 in actual damage. The jury returned a verdict in her favor for $6,700.00. The trial court overruled her motion for a new trial based on the assertion that the verdict was too small and was contrary to the preponderance of the evidence. We upheld the trial court's refusal to grant a new trial and stated: "A fair-minded jury could easily have found that all of Gilbert's medical costs, disabilities and property damage were not attributable to the accident with the Diversified Graphics vehicle." In the *Taylor* case the appellant argued that the jury verdict in the amount of $633.10 was less than her medical bills and therefore she was entitled to a new trial. We upheld the trial court's refusal to grant a new trial on the basis that all of the bills may not have been attributable to the accident.

Another case quite similar to the present one is that of *Freeman* v. *Anderson,* supra. In *Freeman* the plaintiff received a verdict for $500.00, in a case of the defendant's clear liability for the property damage caused by the accident. It had been stipulated that plaintiff's medical bills were $490.00 and that estimates on the damage to plaintiff's automobile went as high as $731.23. However, the defendant denied that the medical bills were proximately caused by the accident. We upheld the trial court's denial of a motion for a new trial based on the inadequacy of the award.

In *Thigpen* v. *Polite*, supra, we stated: "The trial judge's refusal to grant a new trial, with the implication that he found the verdict was not clearly against the perponderance of the

evidence, was not a clear and manifest abuse of discretion, as we would have to find to justify a reversal." There was testimony by medical specialists that part of the appellant's treatment resulted from problems unrelated to the injuries he received in the accident in question. The stipulation agreed to by the appellee was that the medical bills and the other benefits had been paid and that they were reasonable. There was no stipulation that the appellee owed the bills. Therefore, it was up to the appellant to prove the bills were related to the traffic accident. Given the proof presented, a reasonable-minded jury could have concluded that all of the medical bills and disability benefits were not attributable to the accident.

■ The fourth argument by the appellant concerns a statement by defense counsel in closing argument that "the plaintiff has not submitted to you one medical bill." We first note the agreement entered into at the beginning of the trial where the defendant stipulated that the intervenors had paid the medical bills and disability benefits. This same argument was made in very similar circumstances in the case of *Missouri Pacific Railroad Company* v. *Hood*, 198 Ark. 792, 131 S.W.2d 615 (1939). In that case the court held that it was the duty of the trial court to admonish the jury not to consider improper remarks made by one of the attorneys. We agree that remarks based on matters outside the evidence are not proper and should not be allowed. Upon objection, the objection should be sustained, and upon request the jury should be admonished not to consider the improper remarks by counsel.

■ After the defense attorney made the improper statement that "the plaintiff had not submitted one medical bill," the trial court sustained an objection by the appellant. The court at that time stated: "I remind the jury, like I did a while ago, statements by either attorney are not evidence. If anybody makes a statement that is in contradiction to your recollection of the testimony you will disregard it." Although we are of the opinion that it would have been appropriate for the court to have admonished the jury to disregard this specific statement, we believe his admonition to the jury was sufficient to cure any prejudice resulting from the remark. However, we do not wish to encourage courts to refuse to admonish the jury to disregard such statements. It is the better practice to specifically admonish on

such improper remarks.

The fifth argument asserts error by the court concerning several different jury instructions. Several of the objections under this point are to the court's failure to give instructions proffered by the appellant, and others concern the instructions given.

The appellant objected to instructions on comparative negligence which were given by the court. This issue has already been addressed and we need only say that we think there is substantial evidence of the appellant's negligence. The driver of the loader testified that the appellant's car was nowhere near the intersection when he started the turn.

The plaintiff objected to the exclusion of paragraph (c) of AMI 901. This model instruction concerns the duty of a driver to drive at a speed no greater than prudent and reasonable under the circumstances. The testimony of the defendant's driver was that he was not going more than 15 or 20 miles per hour. There is no substantial evidence of unreasonable speed under the circumstances.

The plaintiff also argues that the court erred in refusing to give part of a proffered instruction which reads as follows:

> Any person who drives any vehicle in a manner as to indicate wanton disregard of the safety of others is guilty of reckless driving.

There is not evidence in the record to indicate the driver of the other vehicle acted wantonly in disregard for the safety of others. Therefore, it was not error for the court to refuse this instruction.

The appellant claims error by the court in refusing to give his proffered modified version of AMI 908 as follows:

> No owner shall cause or knowingly permit to be driven or moved on any highway or street any vehicle which is in such unsafe condition as to endanger any person.

Again there simply is no evidence that the loader was in an unsafe condition. Consequently this argument fails also.

The appellant asserts error by the court in refusing his modified AMI 1107. This proffered instruction concerns the operation of a "dangerous instrumentality." We find no evidence

in the record that the loader was a "dangerous instrumentality."

The appellant objected to the court's refusal of this proffered instruction involving "probable increases in future earnings." The jury was given the standard AMI instruction on loss of future earnings and earning capacity. The instruction given includes the essence of the one requested.

Our per curiam of April 19, 1965, adopting the Arkansas Model Jury Instructions (AMI) stated that the model instructions should be given unless the trial judge finds the instruction does not accurately state the law. If the trial judge so finds, his reasons for refusing the model instruction should be given. It is basic that any instruction must be supported by the evidence. From the record it appears that the AMI instructions were adequate or that there was no basis in the facts for giving the modified requested instructions.

The appellant's sixth and final point for reversal is that the trial court erred in failing to grant a new trial. In the foregoing points we have fully discussed all of the issues under this argument. For the reasons stated above we find that the trial court did not abuse its discretion in refusing to grant a new trial.

Affirmed.