SLIP OPINION

Cite as 2016 Ark. App. 320

# ARKANSAS COURT OF APPEALS

DIVISIONS II & III
**No.** CV-14-585

| | |
|---|---|
| | **Opinion Delivered** JUNE 8, 2016 |
| JAMES TREE AND CRANE SERVICE, INC., AND ROGERS WILLIAMS APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION [NO. CV-08-10413] |
| V. | |
| | HONORABLE ALICE S. GRAY, JUDGE |
| TERRI FOUGHT APPELLEE | REVERSED |

**KENNETH S. HIXSON, Judge**

In this motor-vehicle-accident personal-injury case, James Tree and Crane Service, Inc. and its former employee, Rogers Williams, (hereinafter referred to collectively as "James Tree") appeal from the order of the Pulaski County Circuit Court granting appellee Terri Fought a new trial after a jury had found in favor of James Tree and awarded Fought no damages. On appeal, James Tree argues that the circuit court abused its discretion in awarding a new trial. We agree, and we reverse the order granting a new trial and reinstate the judgment entered on the jury's verdict.

On June 26, 2007, Fought was stopped at a stoplight when the Toyota Prius vehicle she was operating was struck from the rear by a 1984 Mack dump truck operated by Rogers Williams and owned by James Tree. Williams left the scene. The impact caused what was

described as a fist-sized dent, a quarter-inch deep on the rear of the Prius. Fought did not immediately complain of any injuries, but, on the following day, she was treated by a chiropractor for injuries that she claimed had been caused by the accident. This treatment regimen continued over a six-year period.

Fought filed suit against James Tree and "John Doe" on September 22, 2008, alleging negligence on the part of the driver of the truck and *respondeat superior* liability against James Tree. In Fought's fourth amended complaint, Fought sought damages for permanent bodily injuries, mental anguish, loss of earning capacity, pain and suffering, and past and future medical expenses.[1] Fought's pleadings ultimately substituted Rogers Williams for "John Doe" and asserted a cause of action for "civil action by a crime victim," based on Williams leaving the scene of the accident. James Tree denied that Fought's alleged damages were proximately caused by the motor-vehicle accident.

A jury trial was held over seven days in September 2013. The case was submitted to the jury on interrogatories. The jury found that Fought sustained no damages that were proximately caused by the negligence of James Tree. The jury also found that Fought sustained no damages as a result of Rogers Williams leaving the scene of the accident. The jury also answered two other interrogatories awarding Fought $0 damages for each claim. Judgment was entered on the jury's verdict on October 24, 2013.

Fought timely filed a motion for new trial asserting four grounds. She argued that the jury's verdict was contrary to the evidence under Ark. R. Civ. P. 59(a)(6); that the jury erred in assessing zero damages under Ark. R. Civ. P. 59(a)(5); and that she was denied a

---

[1] Fought did not include in her complaint a claim for property damage to her vehicle.

fair trial because of the prejudicial misconduct of James Tree's attorneys under Ark. R. Civ. P. 59(a)(1) and (a)(2). The circuit court entered its order granting the motion on the last day prior to the motion being deemed denied. The order, as is allowed by the Arkansas Rules of Civil Procedure, did not include any explanation, reasoning, or indication of which of the four grounds upon which the court relied. *See Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997).

The threshold for reversing a grant of a new trial is the circuit court's having committed a "manifest abuse of discretion," meaning discretion improvidently exercised or exercised thoughtlessly and without due consideration. *Razorback Cab v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993). A showing of abuse is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id*. However, the circuit court is not to substitute its view of the evidence for that of the jury. *Id*.; *Eisner v. Fields*, 67 Ark. App. 238, 998 S.W.2d 421 (1999). Our court must affirm if any of the alleged grounds in the motion would sustain the grant of the order. *See Young v. Honeycutt*, 324 Ark. 120, 919 S.W.2d 216 (1996).

Since the circuit court did not provide its reasoning for granting a new trial, we must analyze all four grounds contended by Fought in her motion. We begin with the discussion of Fought's grounds under Rule 59(a)(1) and (a)(2). They are generally the same allegations and relate to the conduct of one of James Tree's attorneys, Jim Tilley. The alleged improper conduct included several comments Tilley made within the jury's hearing, starting with opening statements. For example, Tilley said, "game on" during Fought's opening statement after the court overruled Tilley's objection that opposing counsel was engaging in character

SLIP OPINION

assassination of one of James Tree's expert witnesses. The court also admonished defense counsel for yawning and making facial gestures indicating that counsel was bored while one of Fought's witnesses was testifying.

Tilley was also charged with contempt arising out of two additional incidents. The first incident relates to photographs depicting the damage to Fought's Prius after the accident, i.e., the "fist-sized, quarter-inch deep dent." Apparently fourteen photographs were taken by James Tree's representatives.[2] For some reason that is not clear from the record, only four of the fourteen photographs were shared with Fought during discovery. At trial, James Tree attempted to introduce some or all of the ten photographs not shared with Fought, and her attorney objected. The court ultimately ruled that all fourteen of the photographs depicting the damage to Fought's Prius were inadmissible. After counsel for James Tree had been warned by the circuit court not to pick up the photographs or use them for any purpose, Tilley carried the inadmissible photographs toward the witness stand, allegedly in clear view of the jury so that the jury could see the "fist-sized" dent. At a subsequent hearing outside the presence of the jury, Tilley denied the court's allegations that he was "parading around the courtroom" with the photographs. After hearing arguments presented by the attorneys, the court found Tilley in contempt and fined him $800.

The second contemptuous incident occurred during closing argument when Tilley made the statement that "Mr. Williams [the truck driver] is not here today because. . . ."

---

[2] There was a dispute as to the exact number of photographs, but the number is immaterial for purposes of this appeal.

SLIP OPINION

which drew an objection from Fought. The circuit judge instructed Tilley not to mention Williams. Following the court's admonition, Tilley continued with his closing argument and told the jury: "Mr. Williams is not here today because I told him he did not have to be here." Again, out of the presence of the jury, the circuit court held Tilley in contempt for disobeying the court's instruction, fining him $1,000 for this incident.

Arkansas Rule of Civil Procedure 59(a) provides that a new trial may be granted (1) for any irregularity in the proceedings which prevented a party from having a fair trial or (2) for misconduct of the prevailing party. James Tree contends that the alleged misconduct of its counsel did not constitute an irregularity or misconduct to such an extent to justify the granting of a new trial. Our supreme court has held that the misconduct of the prevailing party includes the misconduct of the prevailing party's attorney. *Suen v. Greene*, 329 Ark. 455, 462, 947 S.W.2d 791, 795 (1997); *Hacker v. Hall*, 296 Ark. 571, 759 S.W.2d 32 (1988). The question becomes whether this conduct by James Tree's counsel constituted "misconduct" or an "irregularity in the proceeding" within the meaning of Rule 59(a)(1) or (2). We hold it was not. In *Suen*, our supreme court reversed the grant of a new trial, stating:

> [C]ounsel for the plaintiff and defendant were vigorously and professionally advocating the interests of their clients. The circuit court maintained firm control over the proceedings and we are unable to find any reasonable possibility of prejudice against the appellee's right to a fair trial resulting from the actions of the appellant's attorney. Absent any showing that counsel's conduct prevented appellee from having a fair trial, the court's action in ordering a new trial for that reason was a manifest abuse of discretion.

329 Ark. at 462, 947 S.W.2d at 795. While we do not condone the conduct of James Tree's counsel, we believe that the circuit court here maintained firm control over the proceedings

as evidenced by the admonishments to counsel and the entry of contempt orders, and there is no evidence that counsel's conduct prevented Fought from receiving a fair trial. If the circuit court relied upon these two subsections of Rule 59(a) to grant the new trial, we are persuaded that *Suen* compels us to hold that the circuit court manifestly abused its discretion and reverse the granting of a new trial based on Rule 59(a)(1) or (2).[3]

We now turn to whether the circuit court abused its discretion in awarding a new trial based on Ark. R. Civ. P. 59(a)(6), which requires that the jury's verdict be contrary to the evidence; or under Ark. R. Civ. P. 59(a)(5), which requires that the jury erred in assessing zero damages. These two contentions are closely related and are discussed together. James Tree admitted liability, but the mere fact that a plaintiff has incurred medical expenses and the defendant has admitted liability does not automatically translate into a damages award equivalent to those expenses. *See Depew v. Jackson*, 330 Ark. 733, 740, 957 S.W.2d 177, 181 (1997); *Kratzke v. Nestle-Beich, Inc.*, 307 Ark. 158, 817 S.W.2d 889 (1991); *James v. Bill C. Harris Constr. Co., Inc.*, 297 Ark. 435, 763 S.W.2d 640 (1989). The jury is the sole judge of the credibility of the witnesses and of the weight and value of the evidence, and it may believe or disbelieve the testimony of one or all of the plaintiff's witnesses, even though the evidence is uncontradicted and unimpeached. *Potlatch Corp. v. Mo. Pac. R.R. Co.*, 321 Ark. 214, 902 S.W.2d 217 (1995). The burden remains on the plaintiff to prove that any

---

[3] Furthermore, allegations of misconduct pursuant to subsection (a)(2) are required to be accompanied by an affidavit outlining the allegations and the prejudice. Ark. R. Civ. P. 59(c). Here, Fought did not attach such an affidavit.

SLIP OPINION

damages sustained were proximately caused by the negligence of the defendant even where the defendant admits liability. *Dundee v. Horton*, 2015 Ark. App. 690, 477 S.W.3d 558.

Here, the record reveals that Fought had preexisting medical issues and stressors in her life. Her history included prior medical complaints, stress from work and from caring for an autistic child, a cervical spine with degenerative changes, headaches, and depression. She had been prescribed antidepressants just prior to the accident. During seven days of trial, the jury heard multiple competing expert opinions on the physics and force of the collision, the state of Fought's preexisting and postaccident medical condition(s), and whether her alleged injuries and ensuing treatments were proximately caused by the accident. Virtually all of Fought's evidence was countered by competing evidence by James Tree. As in *Kratzke*, the jury apparently determined that Fought did not sustain her burden of proof, as shown in its unanimous verdict wherein it found that Fought did not sustain any proximately-caused damages.

In granting a motion for new trial, a circuit court cannot simply substitute its opinion for the jury verdict unless the verdict is clearly against the preponderance of the evidence. *Young*, 324 Ark. at 124, 919 S.W.2d at 218. Here, Fought sought $850,000 in compensatory damages from a motor-vehicle accident involving a dump truck and a Toyota Prius that caused a fist-sized dent, a quarter inch in depth. It was within the jury's province to assess the damages proximately caused by the negligence of the defendant. In sum, the circuit court erred in finding that the verdict was clearly against the preponderance of the evidence. We are of the opinion that the circuit court substituted its view of the evidence in lieu of the jury's, which it may not do, and a manifest abuse of discretion resulted.

Before closing, there is one other issue we need to address—whether the new trial could be justified by the counsel for James Tree allegedly conceding some damages in his closing argument. Fought argues that during closing argument James Tree's attorney invited the jury to award "some damages." And that this invitation was equivalent to a concession by James Tree that Fought sustained compensable damages to such an extent that the jury erred in assessing zero damages. We disagree.

During closing arguments, defense counsel argued to the jury as follows:

> Let's get down to talking about the car wreck. Answer to Interrogatory Number 1, "Did she have an injury as the result of the car wreck?" You bet. Would I say that she didn't? No. I wouldn't tell you that. But when you come to that question, and you think about what you've heard in this case, and you think where we are six and a half years later, tap yourself behind your right ear. Come back around to what you've heard.  A fist-sized dent a quarter-inch deep, and they've got her believing—and we asked her about it; we saw it—they've got her believing it.

After discussing the reasonableness of Fought seeking treatment from a chiropractor instead of a medical doctor, counsel returned to the issue of how the jury should answer Interrogatory Number 1:

> I ask you to answer Interrogatory Number 1 yes. I ask for you to look at those medical bills for that six to eight weeks. Or even, Ladies and Gentlemen, if you think that maximum medical improvement as described by Dr. Bennett [Fought's chiropractor] wasn't until June of 2009—or '08, excuse me—2008, then so be it.

This is simply an argument, the import of which is—"if you are going to give her something, give her a few weeks of chiropractor bills, not $850,000." This is not a concession of damages. A circuit court may consider concessions made in opening statements or closing arguments in deciding whether to grant a new trial. *See generally Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004); *accord Bruce v. Hancock*, 2010

Ark. App. 171, 374 S.W.3d 138. In those cases, however, there were clear statements by defense counsel accepting responsibility for medical expenses.

In *Machost*, defense counsel said in opening statements:

> We don't dispute . . . that [we] should be, even though it's a shame physical therapy is so expensive but they provide a valuable service, and we don't dispute that we're responsible for, for her medical bills. What we are arguing about here really is the degree of pain and suffering that Mrs. Machost claims to have.

86 Ark. App. at 51, 158 S.W.3d at 728. Then, during closing argument, defense counsel stated that the plaintiff's medical expenses were reasonable and asked the jury to award Machost $10,000, stating: "The expense of the CAT scan, which was negative, and the medical bills which this lady incurred, you know, [the defendant] unfortunately acknowledges that he's responsible for that." Clearly, the defense attorney therein acknowledged and accepted responsibility for medical expenses, and the client was saddled with that responsibility. The same is not true here.

*Bruce* cites *Machost* as authority. In *Bruce*, after a motor-vehicle accident, the plaintiffs were transported to the local emergency room, were examined, and were released. The defendant's attorney admitted in closing argument that the plaintiffs were entitled to damages for the costs associated with the trip to the emergency room. The jury returned a zero verdict. The circuit court granted a new trial. On appeal, the defendant contended the plaintiff did not meet her burden of proving damages. Our court disagreed:

> However, appellees did not fail to meet that burden of proving damages, even if only a modest amount. If nothing else, their trip to the emergency room immediately following the accident was worthy of recompense by the responsible party or parties in this case. Moreover, appellees' entitlement to some damages appeared to be a given considering appellants' *virtual concession* in opening statements and closing arguments that appellees incurred some damages in the accident. Bruce's counsel even went so far as to tell jurors that it was not necessary for them to deliberate the established fact

of appellees' injuries. A circuit court may consider concessions made in opening statements or closing arguments in deciding whether to grant a new trial. *See generally Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004).

*Bruce*, 2010 Ark. App. 171, at 8−9, 374 S.W.3d at 142. (emphasis added).

In the present case, there was no emergency-room bill for the jury to consider that would have been clearly related to the accident. And, there was no virtual concession of damages. The attorney for James Tree herein stated: "*I ask for you to look* at those medical [chiropractor] bills for that six to eight weeks. Or even . . . *if you think* that maximum medical improvement as described by Dr. Bennett [Fought's chiropractor] wasn't until June of . . . 2008, *then so be it*." That closing argument is not an admission to award medical bills as we had in *Machost*, nor is it a virtual concession as we had in *Bruce*. Therefore, we hold that a new trial cannot be sustained on these statements made by counsel during closing arguments.

Because the circuit court abused its discretion, we reverse its order granting a new trial and reinstate the jury's verdict.

Reversed.[4]

HARRISON, WHITEAKER, and BROWN, JJ., agree.

---

[4] The parties presented voluminous addenda containing hundreds of documents, bringing the length of the briefs and addenda to approximately 1,900 pages. We find that this was unnecessary in light of the way the case was argued on appeal and remind counsel that an abstract and addendum can be deficient for containing *too much* material, as well as too little. *See Davis v. Schneider Nat'l, Inc.*, 2013 Ark. App. 737, 431 S.W.3d 321; *W. Memphis Adolescent Residential, LLC v. Compton*, 2010 Ark. App. 450, 374 S.W.3d 922; *Am. Transp. Corp. v. Exch. Capital Corp.*, 84 Ark. App. 28, 129 S.W.3d 312 (2003); *Miller v. Hometown Propane Gas, Inc.*, 82 Ark. App. 82, 110 S.W.3d 304 (2003). Although we decline to order rebriefing, we caution counsel against such practices in the future.

ABRAMSON and GLOVER, JJ., dissent.

**DAVID M. GLOVER, Judge, dissenting.**   The trial court did not abuse its discretion in granting a new trial, and I, therefore, dissent. We should affirm the circuit court's grant of a new trial under Arkansas Rule of Civil Procedure 59 (a)(5) (error in the assessment of damages) and (a)(6) (verdict clearly contrary to the preponderance of the evidence).

The majority accurately states our review standard, which can be summarized as follows:

1.   When we review an order granting a new trial, our inquiry is whether the circuit court abused its discretion. *Razorback Cab v. Martin*, 313 Ark. 445, 856 S.W.2d 2 (1993). The abuse of discretion must be "clear" or "manifest." *Bruce v. Hancock*, 2010 Ark. App. 171, at 7–8, 374 S.W.3d 138, 141.  A showing of abuse is more difficult when a new trial has been granted because the party opposing the motion will have another opportunity to prevail. *Id.* Abuse of discretion means a discretion improvidently exercised, i.e., exercised thoughtlessly or without due consideration. *Id.* However, the circuit court is not to substitute its view of the evidence for that of the jury. *Razorback Cab*, *supra*; *Eisner v. Fields*, 67 Ark. App. 238, 998 S.W.2d 421 (1999).

2.   When an order granting a new trial is expressed in general terms, as in this case, without a specification of grounds, it must be affirmed if it can be supported on any ground alleged in the motion. *Slaton v. Slaton*, 330 Ark. 287, 294, 956 S.W.2d 150, 153 (1997); *Gen. Motors Corp. v. Tate*, 257 Ark. 347, 349, 516 S.W.2d 602, 604 (1974). *Accord, J - McDaniel Constr. Co., Inc. v. Dale E. Peters Plumbing Ltd.*, 2014 Ark. 282, 436 S.W.3d 458 (applying same rule to order granting summary judgment in general terms).

SLIP OPINION

3.  The mere fact that a plaintiff has incurred medical expenses and the defendant has admitted liability does not automatically translate into a damage award equivalent to those expenses. *See Depew v. Jackson*, 330 Ark. 733, 740, 957 S.W.2d 177, 181 (1997); *Kratzke v. Nestle - Beich, Inc.*, 307 Ark. 158, 817 S.W.2d 889 (1991); *James v. Bill C. Harris Constr. Co., Inc.*, 297 Ark. 435, 763 S.W.2d 640 (1989). The jury is the sole judge of the credibility of the witnesses and of the weight and value of the evidence, and it may believe or disbelieve the testimony of one or all of the plaintiff's witnesses, even though the evidence is uncontradicted and unimpeached. *Potlatch Corp. v. Mo. Pac. R.R. Co.*, 321 Ark. 214, 902 S.W.2d 217 (1995).

Fought, in her motion for new trial, argued she was entitled to a new trial because James Tree's attorney and one of its experts, Dr. Harry Smith, both admitted she suffered at least some damages proximately caused by James Tree, yet the jury found Fought sustained *no* damages proximately caused by James Tree. Fought further argued the jury's assessment of $0 in damages was against the preponderance of the evidence.

To counter Fought's argument, James Tree relies on the following facts: (1) the impact or collision was minimal; (2) she did not complain of injuries at the scene; (3) she drove her vehicle while chasing Williams after he fled from the scene of the accident; (4) she did not immediately seek treatment for her alleged injuries, instead electing to receive treatment from a chiropractor the day after the accident; (5) her medical records indicated that, before the accident, she had received treatment for similar complaints (depression and headaches) that she attributed to the accident; and (6) she was involved in a fall at work in 2011 and another automobile accident in 2010 and sought treatment in both instances.

These facts may explain an award of minimal damages, but they do not adequately explain an award of zero damages. Fought's doctors all agreed she sustained at least a sprain or strain proximately caused by the automobile accident. The nature, severity, and permanency of her injuries were sharply contested, but all experts agreed her injuries would not have subsided any earlier than six to eight weeks after the accident. The specific basis for this dissent is that Fought's entitlement to some damages appeared to be a given when James Tree's defense counsel virtually conceded in closing arguments that Fought had incurred some damages in the accident. For emphasis, I repeat the majority's recitation of defense counsel's closing arguments, during which defense counsel argued to the jury:

Let's get down to talking about the car wreck. Answer to Interrogatory Number 1, "Did she have an injury as the result of the car wreck?" You bet. Would I say that she didn't? No. I wouldn't tell you that. But when you come to that question, and you think about what you've heard in this case, and you think where we are six and a half years later, tap yourself behind your right ear. Come back around to what you've heard. A fist-sized dent a quarter-inch deep, and they've got her believing—and we asked her about it; we saw it— they've got her believing it.

Shortly thereafter, when discussing the reasonableness of Fought seeking treatment from a chiropractor instead of a medical doctor, defense counsel returned a second time to the matter of how the jury should answer Interrogatory Number 1:

I ask you to answer Interrogatory Number 1 yes. I ask for you to look at those medical bills for that six to eight weeks. Or even, Ladies and Gentlemen, if you think that maximum medical improvement as described by Dr. Bennett [Fought's chiropractor] wasn't until June of 2009—or '08, excuse me—2008, then so be it.

SLIP OPINION

The majority correctly states a circuit court may consider concessions made in opening statements or closing arguments in deciding whether to grant a new trial. *See generally Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004); *accord Bruce v. Hancock, supra*. I disagree with the majority that defense counsel's statements here did not constitute a concession. Defense counsel twice asked and answered for the jury the direct-injury interrogatory.

An appellant shoulders a burdensome task demonstrating the circuit court abused its discretion. *Williams v. Ingram*, 320 Ark. 615, 899 S.W.2d 454 (1995). I do not believe James Tree has shown the circuit court abused its discretion in granting Fought a new trial on the basis that the jury erred in its assessment of her damages or that the jury's verdict was against the preponderance of the evidence, given defense counsel's statements in closing argument. As our case law holds, it is harder for James Tree to show prejudice from the grant of a new trial because James Tree will still have the opportunity to prevail at the new trial. *Bruce, supra*. The trial court did not abuse its discretion.

I am authorized to state that Judge Abramson joins in this dissent.

*Watts, Donovan & Tilley, P.A.*, by: *Michael McCarty Harrison* and *Jim W. Tilley*, for appellants.

*Chaney Law Firm, P.A.*, by: *Don P. Chaney*, *Nathan P. Chaney*, and *S. Taylor Chaney*; and *Moffitt & Phillips, PLLC*, by: *Brandon Moffitt*, for appellee.