SLIP OPINION

 Cite as 2017 Ark. App. 129

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–1033

JOHNNY WARREN

APPELLANT

V.

ANTHONY FRIZELL

APPELLEE

Opinion Delivered  March 1, 2017

APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, TWELFTH DIVISION
[NO. 60CV-12-2596]

HONORABLE ALICE S. GRAY, JUDGE

AFFIRMED

## WAYMOND M. BROWN, Judge

Appellant Johnny Warren sued appellee Anthony Frizell[1] for negligence after Frizell rear-ended Warren in an automobile accident on July 13, 2009. Warren sought damages for medical expenses, pain and suffering, lost wages, gas mileage, costs, other damages, and attorney's fees.[2] A jury trial took place on January 7, 2015, and Frizell admitted liability. At the conclusion of the trial, the jury returned a verdict in Frizell's favor. A judgment based on the jury's verdict was filed on July 15, 2015, dismissing Warren's complaint with prejudice. Warren filed a motion for a judgment notwithstanding the verdict (JNOV) and for a new trial on July 21, 2015. The court never acted on the motion, and it was deemed denied after

---

[1]Appellee's last name has been spelled Frizell and Frizzell; however, unless using a direct quotation, we will refer to appellee as Frizell.

[2]Warren did not include a claim for property damage to his truck in his complaint.

thirty days. Warren filed a timely notice of appeal on September 17, 2015. On appeal, Warren argues that (1) the trial court erred when it did not enter a judgment in favor of Warren for his medical expenses and (2) the trial court erred by denying Warren's motion for a new trial. Frizell cross-appeals, arguing that the trial court erred in finding that Frizell was not contesting that Warren's medical treatment was reasonable and necessary and that Warren needed to be off work.[3] We affirm.[4]

Warren testified that he was self-employed as the owner of Power Plus Pressure Washing at the time of the accident. He stated that at that time, he had a contract with Pepsi to wash their trucks throughout the state and that he was making approximately $60,000 a year. He said that the accident took place on Broadway Avenue as he was going to the gym. He stated that he had to "catch" himself when he was rear-ended because he was going forward all of a sudden. He said that he braced himself with the steering wheel in order to prevent his head from hitting it or the windshield. He stated that following the accident, they pulled onto Plum Street. He testified that he was driving a 1988 Fleetwood Brougham and that Frizell was driving a "big Sierra" with a guardrail. Warren stated that following the accident, the brake lights did not work, the gas hand was out, the taillight assembly was bent and a filler piece between the taillight and the car was busted, and the bumper guards were knocked off of the bumper. Additionally, he stated that the shocks underneath the bumper

---

[3]Frizell notes that this cross-appeal is filed in an abundance of caution in the event this court decides to order remand on direct appeal.

[4]This is the second time this case has been before us. We initially ordered rebriefing due to deficiencies in appellant's argument. *Warren v. Frizell*, 2016 Ark. App. 490.

were busted, causing oil to leak from them. He said that he was able to drive his vehicle home, and that after the accident, he decided not to go to the gym.

Warren testified that the less he moved, the more pain he was in. He stated that he could barely sleep that night due to pain in his lower back and that he decided to go to the emergency room at Springhill Baptist the next morning. He said that x-rays were taken of his back and that he received a prescription for pain medication. He was also told to follow–up with his primary care physician. He stated that he did not have a physician at the time. He said that he took the medicine but realized that it was not helping his pain. He testified that he finally decided to go see Dr. William Rutledge. Warren said that he presented to Dr. Rutledge on July 20, 2009, with neck and back pain. He stated that Dr. Rutledge prescribed pain medication and physical therapy. He said that he was taken off of work for over two months, from July 20, 2009, to September 29, 2009. He stated that he went to physical therapy about three months. He testified that he was seeking reimbursement for his medical expenses. He also asked to be compensated $10,000 for lost wages.

On cross-examination, Warren stated that his taxable income for 2008 was $17,699 and that his taxable income for 2009 was $19,039. He denied ever injuring his back or neck prior to the accident. He stated that he currently had no problems from his injuries and denied pretending to be hurt after the accident.[5]

---

[5]Appellee unsuccessfully moved for a directed verdict following appellant's testimony.

Frizell testified that he was driving a 2008 Sierra GMC with a guardrail at the time of the accident. He stated that he noticed appellant's vehicle in front of him going at a "very slow speed." He opined that he was going no faster than fifteen (15) mph, when "all of a sudden, [appellant] stopped." He stated that he swerved to the left and "nicked" appellant. He described the accident as a minor bump that did not involve the truck's guardrail. He said that he noticed a "little nick" on appellant's left bumper at the top of the taillight and that his truck had a small black scratch on it. He stated that when appellant got out of his vehicle, he was "bouncing around." Frizell stated that appellant called the police and that they went to Plum Street to give statements concerning the accident. He testified that Warren did not complain about being injured at the scene of the accident.

On cross-examination, Frizell stated in pertinent part:

I am not a doctor. I'm not a nurse. I have no medical training in terms of being able to diagnose people. I'm not telling the jury that I know better than Dr. Jones at the emergency room. I would never do that. I was not there. I trust her opinion over mine. It was my first appearance that he was not hurt.

I'm not telling the ladies and gentlemen of the jury that it was unreasonable for the doctor to order an x-ray.

And when she prescribed medicine for him, the Flexeril and the Loratab, I'm not suggesting to the ladies and gentlemen of the jury that that wasn't something that was necessary.

I don't know Dr. William Rutledge. When he saw him, and he prescribed him physical therapy because he saw muscle spasms and things of that nature, I'm not telling the ladies and gentlemen of the jury that there weren't any muscle spasms or anything of that nature.

I'm not suggesting that somehow another that when he prescribed the physical therapy, that that was something that was inappropriate.

I'm not saying that it was inappropriate for a doctor of his trained opinion as a doctor, a medical doctor to take him off work. I don't think that was wrong. His opinion is superior to all. I mean he's the doctor. Yes. It was appropriate for Dr. Rutledge, in his expert opinion, to have Mr. Warren to be off for the period of time that he asked. On redirect, Frizell stated that he was not injured in the accident and that his body did not "move about" his truck in the accident.

Both Warren and Frizell made motions for directed verdict at the conclusion of

Frizell's case, and the following colloquy took place:

MR. PROCTOR:     Actually, based upon the defendant's testimony, I now move that the Court would enter a judgement in favor of the plaintiff. He just go[t] through testifying that he felt that the medical evidence that we presented was -- that the treatment -- he could not contest the fact that the treatment was not necessary. He agreed that the treatment was something that was necessary. He agreed with the fact that the doctor took him off for the period of time.

So as far as the medical evidence -- I know they contest the amount of the lost wages. But as far as the medical expenses and the records, Your Honor, we move that we get a judgement for the $7,000 in the record -- $7,000 in medical expenses based upon the admission of the defendant. Now, I know the $10,000 is still an issue because he -- they're contesting the amount of the wages. But, you know, he just conceded that -- he conceded our reasonable and necessary. So there is nothing to go to the jury on that.

MR. STATEN:     Your Honor, he said that he is no doctor. And it's up to the jury to decide what medical expenses are reasonable and necessary in relating to the accident. He did not concede and say, oh, I agree that the medical bills are reasonable and necessary. He just said he did not -- he was not a doctor, and he wasn't going to question the doctor. I've never heard of a case like this where the medical bills have been a judgement. The medical bills, based on the testimony of a layperson.

MR. PROCTOR:     Your Honor, here's the problem, Your Honor, what evidence is there in the record the fact that the medical bills and expenses are not reasonably related.

MR. STATEN:      It's up to the jury.

MR. PROCTOR:      It's not up to the jury, Your Honor. When the other side concedes it -- if he had said, No, I don't agree -- if he had just said: No, I'm not a doctor. I don't agree, then, okay, maybe he has a point. But when you say: No, I'm not a doctor. I agree. The doctor has the superior opinion. That is what he said. Then, there is nothing. There's no dispute. There is no longer a factual dispute. We are entitled to a judgement.

THE COURT:      I think it's a matter of the questions that you are asking. And I'm going to allow the jury to go out now.

. . . .

THE COURT:      All right. Plaintiff has made his motion, and the Court is finding that the defendant is not contesting that the medical treatment the plaintiff received was reasonable and medically necessary. And that's one finding that the Court is making.

And, secondly, the defendant agrees that it was appropriate for Dr. Rutledge -- I believe it was -- to direct -- to find that plaintiff needed to be off work from July 20th through September 29th, I believe you are requesting, and that it was appropriate for the doctor to direct him to be off work during that period.

So the Court grants the motion of the plaintiff to the extent that the Court is making those findings.

MR. STATEN:      Your Honor, for the record, how the -- the jury -- the jury instruction says that it's up to the jury to determine -- and let me read the instruction, please, Your Honor. It's up to the jury to reasonably and fairly compensate the plaintiff for the following elements of damage sustained which they find -- okay -- were proximately caused by the negligence of Anthony Frizzell. What the jury finds were proximately caused by the evidence -- by the negligence of Anthony Frizzell.

And then under medical expenses that the Court rules, the reasonable expense of any necessary medical care. Your Honor, we contend it's up to

> the jury to decide what is necessary and whether or not -- and what treatment is necessary and that the services received were reasonable and necessary. And then --

THE COURT:      I understand that. And if -- it's also a jury question whether defendant as liable. But if the defendant concedes that he's liable, then that takes it away from the jury. And the Court listened to the concessions that were made by the defendant, and the Court made its rulings based on those concessions. The same as if he stated those concessions in a pleading. And he made them from the stand.

MR. STATEN:      Your Honor, the -- the defendant simply said that he -- that he's no medical expert, and he's not. And that he's not saying that it is -- it was all negatives. He's not saying that it's unreasonable because he -- he's not an expert as far as x-rays and things like that. I -- he --

. . . .

THE COURT:      Okay. The Court made the ruling that it did. In fact, when I listened to it -- I've now heard the testimony three times. I listened to it when the witness was on the stand, and then I listened to it once with the court reporter. And then I had her stop and go back, and I listened to it again. So I've listened to it three times now. And the Court is making its ruling strictly on the questions that were asked and on the responses that were provided. Now, Mr. Proctor was asking the questions, and the defendant was answering. And the Court is making these two findings just based on what the Court listened to. And I've now heard it three times. And I understand that the attorneys can argue about what he meant, but I heard a clear no contest on some issues. And that's the way the Court is ruling. Now, the rulings are --

. . . .

THE COURT:      -- were very narrow. They didn't cover everything. I made the narrow findings that the Court needed to make, and I think both sides really just need to listen. I specifically didn't address some things because Mr. Proctor did not address them during his

7

questioning. He didn't address money at all during the questions. And so that's why my rulings don't really address the money.

MR. STATEN:         Okay.

During closing argument, Frizell's attorney stated the following:

Ever felt like you've been swimming up stream all day? That's what I feel like. Like I've been swimming up stream all day. I can't win for losing. Mr. Proctor has alluded that I'm going to try to trick you when it comes to the medical expenses. I'm not going to try to trick you. I'm going to tell you the truth. All right. Got a gotcha moment with this young man here. Mr. Proctor asked him several times, "Well you're not a doctor? ' No he's not. And he asked him, well do you know -- you don't know if the doctor says this or the doctor says that. We don't know that. You can't say that this wasn't reasonable and this wasn't necessary.

I've been doing this 29 years and this is the first day I've ever had a gotcha moment. I had a gotcha moment. And the Court ruled that I can't argue that the medical expenses are reasonable and necessary. Excuse me, medical treatment, medical treatment. That the treatment is reasonable.

And I'm going to go ahead and tell you right now. Based on the jury instructions, and to be fair so that nobody can call me a liar. All right. And let me get the exact figure here. All right. Unfortunately, based on the jury instructions and the ruling of this Court. Mr. Proctor used to be a judge. All right. The medical expenses are $6,8020.38. And that's what he keeps on alluding to because that's what the Court ruled. Never seen it before in 29 years.

The attorney was called to the bench and admonished by the trial court. He was also told to appeal the court's rulings if he did not agree with them. In closing, Frizell's attorney told the jury, "So when you get back there and look at all the evidence, here is what I ask you to do, not a penny more, please. Please. You're duty bound $6,820.38."

The trial court reread the jury a portion of AMI Civil 101A, which basically instructed the jury that they were to accept the court's decision concerning evidence "without question and do not guess or assume what the answer might have been." The jurors also received

individual copies of the jury instructions. They were subsequently excused to deliberate. While the jury was out, the court found Frizell's attorney in contempt for his "totally improper" behavior[6] and fined him $800. The jury sent a letter to the court asking, "Have we been instructed that we have to award Mr. Warren $6,820.38?" The court responded by instructing the jury to "apply the instructions to the facts as [they] find them to be." The jury returned a verdict in favor of Frizell. Warren's attorney made an oral motion for JNOV and new trial, arguing that Frizell had conceded to the amount of the medical bills. Frizell's attorney responded that they had not conceded to the amount owed, but only to the court's ruling.

The court entered a judgment on the jury's verdict on July 15, 2015, and dismissed Warren's complaint with prejudice. Warren filed a motion for JNOV and for a new trial. Warren filed a timely notice of appeal after the deemed denial of his motion. This appeal followed.

For his first point on appeal, Warren argues that the trial court erred when it did not enter a judgment in his favor for medical expenses. More specifically, Warren contends that it was error for the trial court to deny his directed-verdict motion and motion for JNOV when Frizell's attorney conceded that Warren was entitled to $6,820.38. A directed-verdict motion is a challenge to the sufficiency of the evidence, and when reviewing the denial of a

---

[6]The court stated that he had to be warned twice about testifying and that even after the warning, he did it at least two more times. Additionally, the court said that he got up in front of the jury and basically told them that they did not have to agree with the court's ruling.

motion for a directed verdict, we determine whether the jury's verdict is supported by substantial evidence.[7] The same rule applies to motions for JNOV.[8] Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without having to resort to speculation or conjecture.[9] When determining the sufficiency of the evidence, we review the evidence and all reasonable inferences arising therefrom in the light most favorable to the party on whose behalf judgment was entered.[10] We do not try issues of fact but examine the record to determine whether there is substantial evidence to support the jury's verdict.[11] Thus, when testing the sufficiency of the evidence on appellate review, we need only consider the testimony of appellees and evidence that is most favorable to appellees.[12] We defer to the jury's resolution of the issue unless we can say that there is no reasonable probability to support the appellee's version.[13]

Before we address whether or not the trial court erred in denying Warren's motions for directed verdict and JNOV, we must first determine if Frizell's attorney's statement during closing arguments amounted to a concession. Generally, an attorney's statements are not

---

[7] *Spann v. Lovett & Co.*, 2012 Ark. App. 107, 389 S.W.3d 77.

[8] *Gassman v. McAnulty*, 2009 Ark. App. 471, 325 S.W.3d 897.

[9] *Spann, supra.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.*

evidence; however, concessions made by an attorney can bind his client.[14] We hold that it did not. At the time the statement was made, the court had already made a ruling on the reasonableness and necessity of the medical expenses. Therefore, based on the court's ruling, Frizell's attorney told the jury that they were duty bound to award Warren $6,820.38. After the jury began deliberations, they sent a letter to the court asking if they were obligated to award that amount to Warren. The court responded by telling them to follow the instructions. They subsequently returned a verdict in Frizell's favor.

Substantial evidence supports the jury's verdict. Warren sought damages for his medical expenses in the amount of $6,820.38, which he argued were related to injuries caused when Frizell rear-ended him. He testified that the impact caused his body to move forward and that he had to brace himself with the steering wheel to keep from knocking his head on either the steering wheel or the windshield. He also testified about the damage his vehicle sustained. However, Frizell's testimony contradicted that of Warren. Frizell testified that he only nicked Warren's left taillight and that there was little damage to either of the vehicles. He also said that he did not experience any movement in his truck, as the accident took place when he was going fifteen mph or less. The jury heard conflicting testimony and ultimately decided that Warren's medical treatment was not in relation to any injuries sustained in the automobile accident. We cannot say that this was error. Therefore, we affirm.

Next, Warren argues that the trial court erred by denying his motion for a new trial. Warren timely filed a motion for new trial asserting three grounds: (1) Frizell's attorney

---

[14]*See Machost v. Simkins*, 86 Ark. App. 47, 158 S.W.3d 726 (2004).

engaged in misconduct, which inured to Frizell's benefit,[15] (2) the jury erred in assessing zero damages,[16] and (3) the jury's verdict was contrary to the evidence.[17] The trial court did not act on the motion, and it was deemed denied after thirty days.

Warren argues that a new trial should have been granted due to misconduct by Frizell's attorney. The improper conduct Warren complains about took place during closing arguments when Frizell's attorney stated that he had a "gotcha moment" and referred to the court's ruling that he could not make an argument that "the medical expenses were not reasonable and necessary." The court admonished the attorney and subsequently found him in contempt and fined him $800. According to Warren, he is entitled to a new trial because this conduct was "so egregious." The decision to grant or deny a new trial under Rule 59(a)(2) is discretionary with the trial court.[18] We will not reverse absent an abuse of that discretion.[19] An appellant bears the burden of demonstrating that a reasonable possibility of prejudice resulted from the alleged improper conduct.[20]

Our inquiry is whether the conduct by Frizell's attorney constituted misconduct within the meaning of the rule. We hold that it was not. While we do not condone the conduct,

---

[15]Ark. R. Civ. P. 59(a)(2).

[16]Ark. R. Civ. P. 59(a)(5).

[17]Ark. R. Civ. P. 59(a)(6).

[18]*D.B. & J. Holden Farms Ltd. P'Ship v. Ark. State Highway Comm'n*, 93 Ark. App. 202, 218 S.W.3d 355 (2005).

[19]*Id.*

[20]*Id.*

SLIP OPINION

we believe that the trial court maintained firm control over the proceedings as evidenced by the admonishment to counsel, the finding of contempt, and the re-giving of AMI Civil 101A.[21] Additionally, Warren has not meet his burden of demonstrating a reasonable possibility that prejudice resulted from the conduct of Frizell's attorney. Therefore, we affirm.[22]

Warren's other two grounds for a new trial deal with the sufficiency of the jury's verdict. Frizell admitted liability, but the mere fact that a plaintiff has incurred medical expenses and the defendant had admitted liability does not automatically translate into a damages award equivalent to those expenses.[23] The burden remains on the plaintiff to prove that any damages sustained were proximately caused by the negligence of the defendant even where the defendant admits liability.[24] The jury is the sole judge of the credibility of the witnesses and of the weight and value of the evidence.[25] Here, the jury found in favor of Frizell, and we have already held that substantial evidence supports that finding. Accordingly, we affirm.[26]

---

[21] *See James Tree & Crane Servs., Inc. v. Fought*, 2016 Ark. App. 320.

[22] We note that we would also affirm due to Warren's failure to comply with the provisions of Ark. R. Civ. P. 59(c) in that this motion, based on misconduct of Frizell's attorney, was not accompanied by an affidavit as required by the rule.

[23] *James Tree*, *supra*.

[24] *Id*.

[25] *Id*.

[26] Since Frizell's cross-appeal was conditional upon the disposition of Warren's appeal, we need not address it.


Affirmed.

HARRISON and HIXSON, JJ., agree.

*Willard Proctor, Jr., P.A.*, by: *Willard Proctor, Jr.*, for appellant.

*Laser Law Firm*, by: *Kevin Staten* and *Brian A. Brown*, for appellee.